## Carter *v.* Carter, Appellant.

Argued November 27, 1935. Reargued January 13, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Frank W. Melvin,* with him *Francis T. Anderson,* for appellant.

*Richard W. Ledwith* and *MacCoy, Brittain, Evans & Lewis,* for appellee, were not heard.

OPINION BY MR. JUSTICE BARNES, March 30, 1936:

This is an action in assumpsit to recover $5,000 from the proceeds of two insurance policies on the life of Thomas Carter, which were paid to the defendant as the beneficiary named in the policies. The plaintiff, Natalie S. Carter, was the second wife of the decedent, and the defendant, Harold Carter, is a son by his first marriage. The policies, issued in 1922, originally named the first

wife as beneficiary, but following his marriage to plain- tiff on December 22, 1925, the decedent made the policies payable to his son, the defendant.

This change of beneficiary was made by Thomas Carter on July 31, 1928, and by a letter* bearing the same date, in his handwriting, and addressed to the defendant, he set forth his reasons for this action. He stated therein that he had made the change in order to avoid the delays incident to a testamentary disposition of this insurance fund, and gave his son instructions for the distribution thereof in the following language: "I have therefore named you and wish you to act as trustee to distribute whatever amount is receivable . . . of this amount you are to retain $3,000—to give Natalie $5,000 and transmit the remainder to your mother."

The letter was found among decedent's effects after his death, in an envelope addressed to defendant, and endorsed: "Only to be delivered in case of death of Thomas Carter." Defendant had no knowledge of the letter, or of his designation as beneficiary in the policies, prior to the death of his father, which occurred on February 25, 1932.

Defendant received the letter, and on March 4, 1932, collected $13,269.51 as the proceeds of the policies, after

---

* The letter reads in part as follows:

"31st July 1928

My dear Sonnie: When in N. Y. this morning I ascertained that by naming a specific beneficiary in my life insurance policies that the amounts can be paid over immediately on proof of death without waiting for probate of estate or proof of will and in this manner the sum payable is not subject to inheritance tax. I have therefore named you and wish you to act as trustee to distribute whatever amount is receivable.

"As the insurance stands at the present moment there would be about $18,000 to collect—of this amount you are, to retain $3,000— to give Natalie $5,000 and transmit the remainder to your mother. The rest of my estate whatever it may be will be disposed of in accordance with my will, which is in your mother's possession."

he had learned of the conditions imposed upon him. He refuses to pay over to plaintiff, who is the "Natalie" referred to in the letter, the $5,000 as directed.

To plaintiff's statement of claim averring the above facts, defendant filed an affidavit of defense raising questions of law. This being adjudged insufficient, he thereafter filed a supplemental affidavit of defense, substantially admitting the facts averred in the statement of claim, but denying that the letter of July 31, 1928, gave plaintiff any beneficial interest in the proceeds of decedent's insurance policies, or that the letter created defendant a trustee for plaintiff. As new matter he alleged that the decedent remained lawfully married to his first wife, defendant's mother, until the day of his death; that plaintiff knew, or had reason to know, that her marriage to decedent in 1925 was bigamous and void; and that "the consideration for the alleged gift of $5,000, as claimed, was the unlawful or illegal relation existing between plaintiff and the said Thomas Carter." To this affidavit plaintiff filed a reply raising questions of law, and at the same time moved for judgment for want of a sufficient affidavit of defense. After argument, the court below made absolute the rule issued on plaintiff's motion, and entered judgment in her favor for the amount claimed, with interest. Defendant appealed.

The entry of judgment in the lower court was based upon the following facts admitted in the pleadings: (1) that the beneficial interest under the insurance policies was transferred to defendant on July 31, 1928; (2) that the letter of July 31, 1928, from Thomas Carter to defendant, directed him to act in the capacity of trustee for the distribution of the proceeds of the policies, including the $5,000 payment to plaintiff; (3) that defendant collected $13,269.51 on the policies, after he had knowledge of the trust created by the letter. There can be no doubt that the legal effect of this arrangement was to create a trust. The transfer to defendant of the interest in the

policies was under and subject to the conditions of the letter, by which the defendant was constituted the trustee of specified trust property for named beneficiaries. The settlor had the unquestioned power of disposal of the funds to be received from his insurance policies, and his letter discloses a clear intention and determined purpose to place these funds in the hands of his chosen fiduciary, in whom he had confidence, for the declared object of insuring prompt distribution to the particular persons he designated.

This court declared a trust of insurance proceeds under similar facts in *Donithen v. Independent Order of Foresters,* 209 Pa. 170. There the insured designated his brother as beneficiary in his insurance certificate. Although he did not so inform his brother, the insured stated to friends and others that he had taken out the insurance for the benefit of his wife so she could pay off the debt on their house; that he had put it in his brother's name because his wife was a minor, but that his brother would carry out his intentions. Upon collecting the insurance, the brother claimed the money for himself. We said, (page 174) : "To establish the trust it was not necessary that Frederick [Donithen] should have communicated with his brother Lloyd [Donithen] and obtained his consent to act before naming him in the certificate. When the latter, after his brother's death, learned the fact, he could have declined to accept the duties of trustee; but on learning the intent of his brother in naming him, he was bound in common honesty, to say nothing about fraternal duty, to faithfully carry out the intention of his dead brother . . . As the fund is personal property the trust can be proven by clear and convincing parol evidence, which shows the intention of the donor."

Although the court below and the Superior Court did not regard the evidence in the Donithen case as sufficiently clear and convincing to establish a trust, this

court did not share that view, and awarded the fund to the widow. The present case is stronger on its facts than the latter case, as here all the essentials of a trust were expressly declared in writing.

It was not necessary under the circumstances to have notified the trustee and obtained his consent to act before designating him as such in the policies. See *Restatement of Law of Trusts*, section 35; *Donithen v. Independent Order of Foresters*, supra. Having accepted the trust, which he might have disclaimed *(Restatement, Trusts*, section 102; *Bogert, Trusts*, section 150), it was the duty of the defendant to administer it *(Restatement, Trusts*, section 169), and to carry out its provisions in obedience to the instructions of his father; he may not now be heard to set up an interest in the trust property adverse to that of the beneficiary *(Krauczunas v. Hoban*, 221 Pa. 213), or to deny the validity of the trust under which his title to the fund in question is derived: *Guilfoil v. Arthur*, 158 Ill. 600; *Federal Trust Co. v. Damron*, 124 Neb. 655; *Ownes v. Ownes*, 23 N. J. Eq. 60; *Boehmer v. Silvestone*, 95 Ore. 154; see *Bogert, Trusts*, sections 543, 581; *Perry, Trusts*, (7th ed.), sections 260, 433; 65 *C. J.*, sections 100, 276. These authorities uniformly hold that it is the duty of a trustee to support the trust and not to aid in any way in attacking or undermining it. A trustee should seek to accomplish the results which the settlor desired. This he cannot do unless the trust remains in existence as a valid legal institution. A promise to execute the trust implied from his acceptance, includes an agreement on his part to support it against attacks upon its validity and integrity. It is a fundamental principle never to be departed from, and is as binding as any axiom of the common law, that he who takes upon himself a trust, takes it for the benefit of him for whom he is entrusted, and will not be permitted to set up the invalidity of the act of its creation.

The defendant earnestly contends that the plaintiff cannot succeed here because she is seeking to enforce a promise made by Thomas Carter, in consideration of the performance on her part of an immoral act. In other words, defendant alleges that the gift in trust was based upon an illegal consideration.

This was the argument advanced against the validity of the trust in *Guilfoil v. Arthur,* supra. There, a property was conveyed in trust for certain declared purposes. When called upon to account for the rents and profits thereof, the trustee, Guilfoil, defended on the ground that the property was acquired by the grantor as the result of a lottery, which was contrary to law. The Supreme Court of Illinois said: "The appellant, Guilfoil, accepted the deed of trust and entered into the possession of the property under it, and by these acts he is estopped from charging its invalidity. . . . When called upon to account, [he has no right] to go behind the deed and call upon the court to inquire whether his grantor's hands are clean or not. That is a matter in which he is in no way concerned. . . . He had no right to remain silent then, and when called upon to account, attempt to hold the lands himself, and call in question the prior acts of his grantor or the person or persons for whose use the property was conveyed."

As we have shown, the defendant trustee is not in a position to raise the objection which is here urged on his behalf. Having accepted the trust his only duty was to obey its instructions. He cannot uphold it in part and attack it in part. As the court below held, the plaintiff's right to the money is legally enforceable by her regardless of her relations with the decedent, and her right to recover does not depend upon any contractual relationship between herself and Thomas Carter. It depends upon the relationship between her and the defendant, which was created when defendant accepted the proceeds of the insurance policies upon the terms of the trust. The allegation, therefore, that the trust was based upon

an immoral consideration is immaterial in this proceeding, and the defendant is bound to pay over the amount claimed according to the conditions upon which he received it. This defense is, therefore, without merit.

It follows from what we have said that the court below properly entered judgment for plaintiff upon the pleadings.

The judgment is affirmed, appellant to pay the costs.