## Briggs' Estate.

68

Argued March 3, 1942.

Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Ira B. Rutherford,* with him *James Rutherford* and *Clarence E. Bodie,* for appellant.

*Lester R. Male,* for appellee.

OPINION BY KENWORTHEY, J., July 23, 1942:

Katherine Briggs Palmer filed exceptions to the First and Final Account of substituted trustees under the will of Mary R. Briggs. In substance, she sought a revision of the discretion exercised by the trustees in attempting to terminate the trust by turning over the balance of the principal, amounting to $1704.03, to Martha Baumann, the daughter of testatrix. The exceptions were dismissed; this appeal followed.

Mary R. Briggs died in 1893. By her will she di-

rected that the residue of her estate, amounting to approximately $7500, be divided into two parts and held by her named trustees, to pay the income from one part to her son, William, and from the other part to her daughter, Martha Baumann. It further provided, and this is the provision here in question, that after the daughter reached the age of twenty-one the trustees "shall pay to her such portion or all of the said one part and the accumulated interest thereof as in the judgment of a majority of my said trustees will be for her best interest and no more for her own separate use ......"[1] There was a similar provision as to the son. It then provided that if either of the children should die previous to the payment to him or her of all of his or her respective part, the remainder was to go to his or her children, if any, and if not, by cross remainders, to the children of the other.

The original trustees named in the will died long ago. The details of the early administration of the trust are not revealed by the record. It appears that A. T. Searle, who died in 1939, had been for a number of years the sole surviving substituted trustee, and that the last payment to Martha Baumann from the funds of the trust had been made in 1933, when she received approximately $1500 in a lump payment.

Appellant is the only child of William, who died in 1938, and her interest in the trust derives from the fact that at the time the account was filed Martha Baumann was about seventy-five years of age and childless.

---

[1] "Provided nevertheless that at any time after my daughter Martha shall have attained the age of twenty-one years my said trustees shall pay to her such portion or all of the said one part and the accumulated interest thereof as in the judgment of a majority of my said trustees will be for her best interest and no more for her own separate use; that the same shall not be taken for the payment of the debts of any husband which she may hereafter have or take and not to be in any way or manner subject to the control of such husband."

And, as we shall point out hereafter, she died before confirmation of the account.

On February 19, 1940, on petition of Martha Baumann, appellees were appointed trustees.

On May 27, 1940, the trustees filed their account showing a balance for distribution of $1704.03, after which appears the following statement: "Pursuant to authority invested in Trustees under the Will of Mary R. Briggs, the balance in hands of Trustees based on inventory as of aforesaid date, after payment of aforesaid claims, by unanimous 'approval of Trustees, was designated to be turned over to Martha R. Baumann as of May 23, 1940, delivery of same, however, to be made after confirmation absolute of this account by the Court."

Before dealing with the more difficult issues we shall first dispose of two contentions, one by the trustees and one by appellant, with which we have no difficulty.

The trustees contend that the attempted Sole and Separate Use Trust for Martha Baumann was void, pointing out that, under the law of Pennsylvania, such trusts are valid only when made for the benefit of a person actually contemplating marriage with a specific person, that, although testatrix died in 1893, the will was executed in 1877, at which time Martha was fourteen years of age, and that the date of execution rather than the date of death controls in determining the power to create such trusts; that the fund belonged to her from the beginning free and clear of the trust restrictions. *Estate of Quin, in Trust,* 144 Pa. 444, 22 A. 965; *Appeal of Neale, Guardian,* 104 Pa. 214; *Benefactor B. & L. Ass'n v. Latta and Girard Trust Co.,* 106 Pa. Superior Ct. 156, 160, 161 A. 757. It is a complete answer to this contention, that the trustees are not in a position to make it. "It is a fundamental principle never to be departed from, and is as binding as any axiom of the common law, that he who takes

upon himself a trust, takes it for the benefit of him for whom he is entrusted, and will not be permitted to set up the invalidity of the act of its creation." *Carter v. Carter*, 321 Pa. 391, 396, 184 A. 78. In addition, in the cases relied on, the only purpose of the trust was to prevent alienation by a married woman in favor of or under coercion by her husband, and when the restrictive limitations fell, since there was nothing else to support it, the entire trust was declared invalid. Here, on the other hand, the trust had a double purpose: (1) To preserve the principal for remaindermen except insofar as in the discretion of the trustees it would be for the best interest of the beneficiaries to pay it over, and (2) as to Martha, to prevent her alienation of the portions of principal paid to her. The first purpose mentioned is identical with the purpose of the trust for the son, William, and is separable from the second. Even if the contention were sound, it would only have the effect of eliminating the restriction on Martha's power to use the fund after receipt of it; it would not entitle her to the fund outright.

Appellant contends that the attempted exercise of discretion was a nullity because the appointment of the trustees was made without giving her the notice required by the Act of June 7, 1917, P. L. 447, Sec. 56(b), 20 PS 972, which provides for the appointment of trustees by a court to fill vacancies "on the application of any party interested, and with notice to all persons interested, so far as such notice can reasonably be given." But, in our opinion, appellant has effectively waived the right to make the contention. Neither in a telephone conversation with one of the trustees immediately following the appointment, nor in a subsequent letter written to each of the trustees, did she raise any question of the failure to give her notice. She failed to raise the question in her exceptions filed June 12, 1940. And she failed to raise

the question in her additional exceptions filed July 17, 1940 after the confirmation of the account nisi. The question was raised for the first time in exceptions, filed January 20, 1941, to the opinion of the court of January 14, 1941. The case is clearly distinguishable from *Lancaster & Mintzer's Appeal,* 111 Pa. 524, 531, 4 A. 333, where there was a petition for the removal of a trustee who had been appointed on oral motion and without notice to appellant, and where the court pointed out that "[appellant] did no act of acquiescence."

We now come to the more difficult questions.

*First.* Did the trustees abuse their discretion?

In the opinion of a majority of this court they did. Although courts will not substitute their own judgment for the judgment of trustees given discretionary powers, and although we here find no evidence of bad faith or improper motive, the exercise of discretion by trustees is nevertheless subject to the limitation that they must not act outside the bounds of reasonable judgment. In other words, although there is often a wide field within which trustees may determine whether to act or not and when and how to act, yet beyond that field the courts will control them. How wide that field is depends upon the terms of the trust, the nature of the power and all the circumstances. Where trustees are to pay a part of the principal to a beneficiary entitled to the income, if in their discretion it be deemed wise or for the best interests of the beneficiary, their decision would normally be final; in such cases the real question is whether it appears that the trustees acted in that state of mind in which it was contemplated by the testatrix they should act. See Restatement, Trusts Sec. 187; 2 Scott, Trusts (1939) Sec. 187.

In the present case Mrs. Baumann had not asked for any of the fund. She had taken no steps to procure any of it since the last payment to her in 1933. Her

husband was admittedly a man of means well able to provide for her. According to appellant's testimony, which was uncontradicted, the husband was a domineering individual who treated Mrs. Baumann badly, controlled all her affairs, was antagonistic toward appellant, and, in a stormy scene between the three of them, Mrs. Baumann had told appellant she didn't want the money but her husband demanded she take steps to get it. Although it does not appear that Mrs. Baumann was actually bedridden at the time the trustees attempted to exercise their discretion, she became so shortly thereafter and died on June 30, 1940. Under all the circumstances, the only reasonable conclusion is that the payment of the money to her could not be of benefit to her; it could only benefit her husband.

It is significant that the trustees did not even attempt to demonstrate that they exercised any judgment in the ordinary meaning of the word, although they said they exercised "our very best judgment." They had no facts before them which would indicate that payment would be any benefit to Mrs. Baumann. When one of the trustees was on the witness stand, he was asked the question: "Now, what factors influenced your decision? A. The Will itself, the wording of the Will itself. Q. The wording of the Will itself was practically the entire factor, I take it? A. That is right." Although not so explicit, the other trustees indicated they too were not making the decision based upon circumstances presented to them, but solely because they thought the Will gave them the power to turn over the money.

In our opinion, the case is distinguishable from *Martin's Estate*, 135 Pa. Superior Ct. 136, 4 A. (2d) 551, in that there, there was no evidence the beneficiary would die an early death or would, for any other reason, fail to benefit by the payment. The case is similar in many respects to the Massachusetts case of *Corkery et al. v. Dorsey et al.*, 223 Mass. 97, 111 N. E. 795. And compare *Greenwald's Estate*, 345 Pa. 119, 26 A. 2d 918.

74

*Second.* A majority of the court are of the opinion that the transfer of the fund to Martha Baumann was incomplete because conditioned on confirmation absolute of the account, and that her death (June 30, 1940) prior to confirmation (January 14, 1941) should have required the court to stay confirmation. Laying aside technicalities and bearing in mind that the function of the trustees, the court below and this court, is to carry out the Will of testatrix, it is obvious to anyone that the payment of the principal of a trust fund intended "for her best interest" is too late if made after the beneficiary's death. Apparently recognizing the soundness of this proposition, the trustees argue that the transfer was executed prior to her death. Subsequent to the filing of the account and prior to the death, the trustees transferred the securities, representing the corpus of the fund, to a safe deposit box in the Honesdale National Bank opened in the name of Martha R. Baumann. The key was delivered to counsel for the trustees. It is conceded that Mrs. Baumann never had actual possession of any of the securities, that she never visited the safe deposit box, and that she never even received the key in her lifetime. In our opinion, the trustees never relinquished complete control over them. And it further seems clear that they didn't intend to. Until all the items in the account were confirmed absolutely, it was impossible to determine the exact amount of the balance due; it was possible, even, that other claims would be presented which were not included in the account. The trustees may have had some doubt about the validity of the attempted exercise of their discretion. At any rate, they took the precaution of explicitly conditioning the exercise of it on confirmation by the court and preserving the status quo in the meanwhile. The confirmation came too late.

The order dismissing exceptions to the order and

decree is reversed and the record is remanded to the end that the account be restated in a manner not inconsistent with this opinion, costs to be paid out of the trust fund.