JACKMAN (RICE, Intervenor) et al. v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.

No. 8465.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 20, 1944.

Decided Nov. 29, 1944.

Joseph S. Conwell, Jr., of Philadelphia, Pa., for appellant.

Bryan A. Hermes, of Philadelphia, Pa. (Nathan Griffith, of Philadelphia Pa., on the brief) for appellee Elsie J. Jackman, Executrix of Estate of Karl M. Metzger.

Before JONES and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

JONES, Circuit Judge.

This appeal grows out of a suit in the District Court of the United States for the Eastern District of Pennsylvania upon a policy of life insurance issued by the defendant company. The defendant, admitting liability, paid the net proceeds of the policy into court under a decree of interpleader. All claimants to the fund were made, or duly became, parties to the suit which was tried to the court below upon stipulated facts. The trial court awarded the fund to the insured's executrix on the theory that, under the circumstances shown, there was a resulting trust in respect of the policy in favor of the insured's estate. LeRoy Rice, the named beneficiary in the policy at the time of the insured's death, brings this appeal, assigning as error the trial court's failure to award to him outright the proceeds of the policy as his individual property.

At the time of the issuance of the policy (May 1932) Karl M. Metzger, the insured, named as the beneficiary thereof his "executors or administrators". On October 7, 1938, he executed a "Request for Change of Beneficiary" wherein he named LeRoy Rice, a friend, as the beneficiary of the policy, reserving at that time the right to make further changes of beneficiary. On October 14, 1938, the insurance company noted on the policy the change of beneficiary to Rice. No further changes of beneficiary were made.

On November 6, 1938, the insured wrote Rice as follows:

"Dear Roy:

I was borrowing recently on my life insurance and they advised me to have a definite beneficiary if I should pass out, as I am now a bachelor.

I put you in as my beneficiary and shall put it in my will as such with the proviso that my life insurance $5000.00 in case of normal death—$10,000 for a death thru accident—be divided between 5 of my closest friends of which you naturally are one. The other 4 I shall name in my will.

I hope this is satisfactory to you and that you would carry out my wishes.' We can talk it over further, when we next meet.

Take good care of yourself Roy; better than I do.

Karl"

To the foregoing, Rice responded to Metzger by letter of November 17, 1938, as follows:

"Dear Karl:

At last I will get a line to you. Every thing seems to happen so that, I am unable to answer your letter.

Whatever you want me to do regarding your will, you may feel sure I can be depended on to carry out your wishes. Enough about that, because you are going to live to help plant me!

There was one statement in your note which pleased me more than the possible chance of getting any money, that was the statement that, you classed me as one of your friends. That is good news!

We are looking ahead to your coming at Christmas time and I hope you can get a real rest and have some treatments. Also you will want to hear some music. Jack, Alvin and Eunice are playing some very beautiful trios by Haydn. Jack is very good. You will enjoy listening to him.

Miss Silberman was here once for a few minutes while I was busy with patients, so I saw her only a short while

but liked her very much. You will most likely see her when you come.

You and I will have a chance to talk when you come. I am no good writing letters. Take care of yourself.

Sincerely yours,<br>Roy"

The insured died on July 13, 1939. His will was probated at his place of domicil in Pennsylvania on August 24, 1939, and letters testamentary were duly issued to Elsie J. Jackman, the executrix. The will, which had been executed by the testator on January 9, 1937, spoke of his estate as consisting of the insurance policy, two lots of ground and any moneys to his credit in an account with a local Pennsylvania trust company. The will named nine legatees who were to share the net estate equally but contained no identification of the five friends, including Rice, among whom the proceeds of the life insurance policy were to be divided. There was found, however, among the insured's papers after his death a handwritten memorandum on a slip of paper in words as follows:

> "to share
> insurance
> Roy Rice
> Leila Goodrum
> Russell
> Elsie Jackmann
> Russel Hillier
> Lina Metzger"

The trial court competently found the above quoted memorandum to be in the handwriting of the insured.

At all times presently material, the insured was a resident of Pennsylvania. The insurance company is a New York corporation. Rice, the trustee of the alleged trust, is and continuously has been, a resident of Ohio. At least three of the five putative cestuis were and still are residents of States foreign to Pennsylvania; another (Leila Goodrum Russell) resided in France; and the residence of the fifth cestui (Russel Hillier) does not appear from the record.

As federal jurisdiction of the controversy rests upon diversity of citizenship, the rights of the parties are to be determined according to applicable local law (Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487), in this instance, the law of Pennsylvania. In applying local law, it is the duty of a federal court to follow the local rule of conflicts as well. Klaxon Company v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477. From the facts as above recited, it is readily apparent that we have first to determine, according to Pennsylvania's rule of conflicts, what law a Pennsylvania court would apply if called upon to adjudicate the rights of the parties to the instant suit.

Where both the trustee and the trust property are located in a foreign State and the trust deed was executed there for performance in that State, then, under Pennsylvania's rule, the law of the foreign State governs even though the settlor was domiciled in Pennsylvania. Cf. J. P. Lines v. W. E. Lines, 142 Pa. 149, 165, 21 A. 809, 24 Am.St.Rep. 487. Likewise, where the settlor and cestuis are citizens of a foreign State and the trust res (intangibles) has a like foreign status, the law of the foreign State governs even though the trustee is a citizen of Pennsylvania. Fowler's Appeal, 125 Pa. 388, 393, 17 A. 431, 11 Am. St.Rep. 902.

No Pennsylvania decision has been cited nor have we found any which covers the precise situation here present where the settlor is a citizen of Pennsylvania, the situs of the trust res is presumably the domicil of the insured and the trustee and beneficiaries of the alleged trust are citizens of States foreign to Pennsylvania. In order to apply local law where there is no authoritative local decision or statute, it is incumbent upon a federal court to ascertain and apply what it believes to be the law which a court, authorized to speak the law of the particular State, would apply if called upon to adjudicate upon like circumstances. See Meredith v. Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7.

So recognizing, it is our opinion that, under Pennsylvania's rule of conflicts, the rights of the parties to the instant suit are to be determined according to the substantive law of Pennsylvania. We believe this conclusion is in keeping with the rationale of the Lines and Fowler cases, supra, and we are further confirmed in our opinion by an eminent authority on conflicts who observed that "The law governing the validity of a trust of intangibles cannot be stated with confidence. In most of the few cases in the books the domicil of the owner and the situs of the intan-

gibles (if they could be said to have any) were the same, and that law was held to govern the validity of the transaction. * * * 'it seems safest in the case of intangibles not part of an aggregate, to apply the law of the domicil of the owner to the passing of title' ", 2 Beale, Conflict of Laws, § 294.4.

Turning then to the merits of the present controversy, the question is whether the letter from Metzger to Rice concerning the insurance policy (in which Rice expressly acquiesced) was sufficient to impress the policy and its proceeds with a trust under Pennsylvania law. We think it was.

 Of course, the burden of proving that the real beneficiary of a life insurance policy is someone other than the beneficiary named therein is upon the person so asserting; and, to meet that burden, the proof must be clear, precise and convincing. Unless, therefore, the proof as to the trust here alleged is clear, the named beneficiary is entitled to the proceeds of the policy. Lawrence v. Godfrey, 296 Pa. 474, 479, 146 A. 107. In the Godfrey case the court pointed out (page 479 of 296 Pa., page 108 of 146 A.) that three elements must concur to create a trust, viz., there must be (1) sufficient words to create the trust relation, (2) an identifiable subject matter and (3) an ascertained object of the trust. All three of these requirements are amply supplied by the facts of this case.

The above quoted letter which Metzger wrote Rice, upon making the latter the beneficiary of the policy, plainly stated that he did so "with the proviso" that the proceeds of the policy would "be divided between 5 of my closest friends of which you naturally are one. The other 4 I shall name in my will." The insured further expressed the hope that this was satisfactory to Rice and that the latter would carry out the insured's wishes. Thus was the intention of the settlor clearly and unambiguously stated. And, it was just as clearly understood and acquiesced in by Rice when, in direct response, he wrote Metzger that "Whatever you want me to do regarding your will, you may feel sure I can be depended on to carry out your wishes." This, of course, had direct and specific reference to the insurance policy. The only mention of a will in Metzger's letter was as to its being the then intended place for identifying the four others who, with Rice, were to share the proceeds of the policy. No particular words or form are required to create a trust relationship so long as the settlor's intention is clear. Gribbel v. Gribbel, 341 Pa. 11, 14, 17 A.2d 892; O'Connor v. Flick, 274 Pa. 521, 523, 118 A. 431; Estate of Thomas Smith, 144 Pa. 428, 437, 22 A. 916, 27 Am.St.Rep. 641. The correspondence between Metzger and Rice was legally sufficient to create a trust relationship between them with respect to Metzger's insurance.

The subject of the trust, viz., the policy of insurance on the settlor's life, is obviously beyond dispute.

The object of the trust was to benefit with the settlor's life insurance five of his close friends of whom Rice was credited with being one.

True enough, at the time the settlor created the trust with respect to his insurance, it was his expressed intention to identify later by will the four who, with Rice, were to divide the proceeds of the policy among them. As already stated, that, the settlor never did. In fact, his will, which had been executed almost two years before he created the insurance trust, remained unchanged to the date of his death. Because of the settlor's failure to identify by will the five who were to share the proceeds of his life insurance policy, the trial court held that there was a failure of beneficiaries of the trust and that, therefore, a trust of the insurance resulted in favor of the insured's estate.

We entirely agree with the court below that in no event is Rice entitled to the proceeds of the policy as his individual property. His status as the beneficiary of the policy was impressed with an express trust in favor of four others, to be named, and himself. We further agree that, if the trust failed for want of identifiable beneficiaries, then a trust of the insurance did automatically result in favor of the settlor's estate. But, the question remains whether it is legally necessary that the trust, which the settlor so clearly declared, must fail for want of beneficiaries merely because the testator left a memorandum in his own handwriting naming the five friends, including Rice, who were to share his insurance rather than incorporating in his will the names of the intended five beneficiaries. In passing, it may be noted that the effect of the action taken by the court below would be to distribute the proceeds of the insurance as a part of the insured's estate among nine legatees; and,

of these legatees, Hillier (one of the five intended sharers of the insurance as named in the settlor's handwritten memorandum) is not one. It is apparent, therefore, that the resulting trust would, in substantial part, actually work a complete reversal of the settlor's intent.

The settlor's reference to his will in his letter to Rice was undoubtedly intended to indicate the means of identifying the four friends, in addition to Rice, who were to share the insurance. There is no indication, however, that the will was to be the exclusive means for supplying such proof. The question is simply one as to how the identity of the beneficiaries of the insurance trust may be established. Manifestly, the will was not intended to operate testamentarily in such regard. Nor did it do so. The insurance had already been extracted from the settlor's estate in his lifetime by his own voluntary change of beneficiary to Rice. See Gritz v. Gritz, 336 Pa. 161, 164, 7 A.2d 1, 122 A.L.R. 1297. The trust which the insured created upon changing the beneficiary was an inter vivos trust. Fidelity Title & Trust Co. v. Graham, 262 Pa. 273, 277, 105 A. 295. As such, all of its essential elements are provable by parol evidence. Donithen v. Independent Order of Foresters, 209 Pa. 170, 174, 58 A. 142. In the Donithen case, where a certificate for death benefits in a beneficial society named the deceased member's brother as the beneficiary, parol evidence was held both competent and sufficient to establish a trust of the proceeds of the certificate in favor of the decedent's wife.

When Metzger wrote Rice apprising him of the insurance trust with Rice, the beneficiary, as trustee, and stating that he would name in his will the four other beneficiaries of the insurance, did he mean a formal will or codicil to his already existing will? Or did he mean a writing which he would leave at death and according to which he expected Rice to act conformably? It is not unusual that a layman's idea of a will does not meet the statutory requirements of a valid testamentary instrument. We think that the memorandum in the settlor's handwriting competently and sufficiently supplies the proof as to the five friends, including Rice, who were "to share [the] insurance". Of course, had the settlor, by a new will or by a codicil to his old one, named the beneficiaries of the insurance trust, that would have furnished the source of the proof necessary to identify the beneficiaries. But, the settlor not having done so, still the beneficiaries were identifiable by any competent and adequate proof. The memorandum in the settlor's handwriting fully qualifies as such.

In Carter v. Carter, 321 Pa. 391, 184 A. 78, a father died leaving two policies of insurance in which he had named his son as the beneficiary. After the father's death, a letter addressed to the son in the father's handwriting was found among his effects. In the letter the father stated that he had made his son the beneficiary of the policies to avoid the delays incident to a testamentary disposition of the insurance money and directed that the son divide the proceeds of the insurance with certain named persons. After receiving the letter, the son collected the insurance and then refused to carry out the direction of the letter. The court there held that the insurance was impressed with a trust on the basis of the father's letter to the son. It will be noted that the existence of the letter was unknown to anyone save the father until after his death,—in other words, not until the son's rights as the absolute beneficiary of the policies had become fixed by the father's death. How much stronger is the instant case where the trust was unqualifiedly accepted by the beneficiary in the lifetime of the insured whose privilege it was to change the beneficiary of the policy if Rice indicated an unwillingness to carry out the insured's wishes. The instant case is clearly distinguishable from Brubaker v. Lauver, 322 Pa. 461, 185 A. 848, 849, upon which the appellant relies, where the alleged trust writing was "vague, uncertain, and ambiguous" and did "not express a final and definitive intention to create a trust."

In our opinion Metzger's letter to Rice, together with the memorandum in Metzger's handwriting found among his effects after his death, established an express trust of the insurance in favor of the five beneficiaries named in the memorandum.

The judgment of the District Court is reversed and the case remanded for further proceedings in conformity with this opinion.