Gustave T. SWOBODA and Emily L. Swoboda, Husband and Wife, Appellants,

v.

UNITED STATES of America, Appellee.

No. 12542.

United States Court of Appeals Third Circuit.

Argued May 16, 1958.

Decided Sept. 12, 1958.

Kimber E. Vought, Philadelphia, Pa. (Richard J. Partridge, James L. Baxter, Orr, Williams & Baxter, Philadelphia, Pa., on the brief), for appellants.

Karl Schmeidler, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., Harold K. Wood, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Henry J. Llewellyn died testate on March 19, 1940, a resident of Pennsylvania. He was survived by three children: Emily, Clinton and Margaret. The testator left the residue of his estate in trust. The income from one-third thereof was to be paid to Margaret during her lifetime. The income from the other two-thirds was for ten years to be divided equally between Clinton and Emily; after ten years the trustees were to pay over a third of the corpus to Clinton and a third to Emily. If either Clinton or Emily should die before the distribution to them of their shares, the share of income and corpus afterward was to be paid to any surviving child. The trustees of the residuary trust were the testator's three children along with the Corn Exchange National Bank and Trust Company of Philadelphia.

The principal asset of the trust was the H. J. Llewellyn Company, a baker-supplies business. Clinton was entrusted under the will with the operation of the business which was to be carried on for ten years unless certain conditions immaterial here were met. The continuation of the business beyond the ten-year period was to be within the discretion of any two of the testator's three children. Clinton died some four years after his father and his son succeeded to his beneficiary interest in the trust. The other trustees took over the operation of the business.

March 19, 1950 was the tenth anniversary of the testator's death and marked the date calling for distribution of two-thirds of the corpus. Formal distribution had not been made by June 1, 1950 when the business was sold for $40,000. On their joint income tax return for 1950 Emily and her husband, plaintiffs below and appellants here, claimed a deduction apparently for one-third of the operating loss incurred by the business between the date on which distribution was called for and the date the business was sold. The operating loss during that period of somewhat more than ten weeks amounted to $14,208.52.[1]

The taxpayers further claimed a capital loss; the amount claimed was apparently one-third of $59,051.63 which represented the difference between the book value of the business on March 19, 1950 and the sale price on June 1.[2] The taxpayers' claims were disallowed. They sued in the United States District Court under 28 U.S.C. § 1346 to recover the $4,738.19 paid in response to the deficiency consequently assessed against them. They here appeal the judgment there entered against them.

Both the appellants and the United States assert that the determinative point is whether the trust under Pennsylvania law terminated on March 19, 1950 or was still in effect on June 1, the date of sale.

The consequence of a termination on March 19 is thought to be that the taxpayer-wife became a legal owner of an

---

1. Both parties are agreed on this figure. We assume that the term "operating loss" has been employed by both parties to denote the amount by which gross income for the period was exceeded by the sum of deductible items occurring in the operation of the business.

2. Because the amount of the capital loss appears to have been stipulated we do not stop to inquire whether the loss has been correctly measured; in fact we do not have before us the information requisite for such a determination.

undivided one-third interest in the business; it would follow that her nephew, Clinton's son, obtained an identical interest and that the trustees thereafter continued to hold title only to the remaining third for Margaret. It would follow also that these tenants-in-common would be entitled for tax purposes to avail themselves of proportionate shares of the operating loss (in the sense referred to in footnote 1) during the period of their ownership and of any capital loss resulting from the sale.[3]

On the other hand if the trust continued to hold full legal title to the business until formal distribution, then the capital loss and the deductions aggregating the operating loss would be available only to the trust,[4] the 1939 Code being the one applicable to this case.

We agree that the determinative point in this litigation is whether the trust continued alone as the holder of legal title to the business down to June 1, 1950. Often in the field of Federal taxation forms are looked through to the substance of the matter, but it is nonetheless true that form is often of primary importance. Taxation of trust income has always posed problems for Congress because of the trust concept's attractive susceptibility for use in avoiding or reducing income taxes. In attempting a resolution of these problems Congress has deemed it fitting that state law should determine the basic premise of whether the trust form has been established or whether it continues. Congress has decreed that certain tax consequences will proceed from the establishment and continuation of that form. We pass therefore to an examination of the applicable law.

■ First, as a matter of trust law generally, it is true that "(t)he trust ordinarily does not automatically terminate merely because the time for distribution has arrived; it is terminated only when the trustee has finally accounted and conveyed the trust property to the persons entitled to it on the termination of the trust." 3 Scott, Trusts, § 344, p. 1889; Restatement, Trusts § 344. There are situations, however, in which the legal title to the property vests in the remainderman upon termination of the trust without a conveyance by the trustee. But where the trust corpus consists of property other than realty the mere termination of the trust does not vest the corpus in the remainderman. In the case of real property the Statute of Uses will effect a conversion of the legal title without the necessity of a conveyance by the trustee. The Statute of Uses, however, does not affect personal property in trust. Thus, unless the terms of the trust expressly provide that the legal title to personal property in the corpus shall pass to the remainderman without the necessity of a conveyance by the trustee, legal title remains with the trustee until he makes his distribution of the personal property. Scott, Trusts § 88.1, p. 487.

■ Here there was no expression of intention by the testator which would

3. That these would be the tax consequences of a tenancy-in-common is plain from the following cases: Hafner, 1934, 31 B.T.A. 338; Dunham, 1933, 27 B.T.A. 1068; Bekins, 1930, 20 B.T.A. 809; Gillette, 1929, 18 B.T.A. 434; First National Bank of Duluth, Special Admr., 1928, 13 B.T.A. 1096 (all five cases stand for the proposition that income from property held in joint account by tenants in common is taxable to each owner in proportion to his contributions to the account); C. W. Gallagher, 1925, 2 B.T.A. 1057, (income from a business conducted by tenants in common is received in year earned rather than in year distributed); E. B. Boyd Estate, 1957, 28 T.C. 564; (one tenant-in-common with another could deduct only one-half of the expenses he actually incurred in operation of the rental property since he was entitled to reimbursement by the co-owner for the other half).

4. § 161 I.R.C.1939, 26 U.S.C. § 161, provides that the taxes imposed on individuals shall apply to the income of any kind of property held in trust and that the tax shall be computed upon the net income of the trust. § 162 provides that the net income of a trust shall be computed in the same manner and on the same basis as in the case of an individual, with certain exceptions not here in dispute.

prevent the application of the general rules. This trust was an ordinary trust for a term of years and there is no reason to assume that the trustees were to be divested of legal title to the trust property before they effected its actual distribution. Section 88 of Scott on Trusts, at p. 486, in speaking of the extent of the trustee's estate in real property, points out that the express imposition on the trustee of a duty to convey implies the grant of a legal estate in fee simple to the trustee rather than one limited to the same term as the equitable estate measuring the duration of the trust. Else he would have nothing to convey. Such a duty to convey continues the active trust and is sufficient for preventing operation of the Statute of Uses to vest legal title of the trust property in the remainderman. If this is true as to trusts of real property to which the Statute of Uses would otherwise be applicable, then surely the imposition of such a duty to convey as is impressed by paragraph fourth of the testator's will[5] removes any doubt that the trustees were given the legal title to the trust property until such time as they conveyed it.

We have found no Pennsylvania opinions that would change this result. In all but one of the taxpayers' Pennsylvania citations the trusts involved held real property and were thus subject to the Statute of Uses. The exception is In re Thaw's Estate, 1948, 163 Pa.Super. 484, 63 A.2d 417, which the taxpayers attempt to distinguish. That case held that a trustee of personal property who on tax day was in the process of winding up the affairs of the trust after the date for its termination was liable for the personal property tax imposed on the owner of personal property. The decision reversed the lower court which had held that the trust ended on the date the life beneficiary died; the lower court had relied on a number of cases involving trusts of real property to which the Statute of Uses was applicable. The Superior Court however appears not to have appreciated this, but took the ground that whether or not the trust had terminated was not decisive of whether the legislature had intended a trustee to avoid taxation on the property held in trust. As seen the opinion itself leaves something to be desired as authority for our case, though the decision is in point.

Some cases raising the same or similar questions to the one before us but involving trusts subject to other than Pennsylvania law and which accord with the result we reach are Russell v. Bowers, D.C. 1939, 27 F.Supp. 13; Neave v. Commissioner, 1952, 17 T.C. 1237; Coachman v. Commissioner, 1951, 16 T.C. 1432. Cf. Bingham's Trust v. Commissioner, 1945, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670; Commissioner v. Davis, 1 Cir., 1943, 132 F.2d 644.

The judgment is affirmed.

---

5. "Fourth: At the expiration of ten years from the date of my death, I direct my trustees to pay over * * * one third of the principal or corpus of my estate, absolutely and in fee simple."