541 A.2d 765

**Anthony M. DiLUCIA, Appellant,**

v.

**Alvin H. CLEMENS, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1987.

Filed May 9, 1988.

468

David M. Jordan, Norristown, for appellant.

William J. Brennan, King of Prussia, for appellee.

Before CIRILLO, President Judge, and BROSKY and BECK, JJ.

BECK, Judge:

This case raises issues related to the creation of an express trust within a business context, the revocation of the trust by oral agreement, and the applicability of laches to the trust.

Appellant DiLucia brought an action in equity to enforce a written declaration of trust:

## DECLARATION OF TRUST

I, Alvin H. Clemens, hereby declare to hold IN TRUST Two Thousand (2,000) shares of Unicom, Inc.'s stock for the equitable owner, Anthony M. DiLucia, with a duty to transfer legal title to said two thousand (2,000) shares to Anthony M. DiLucia thirty-six months from this date. Dated: 4/2/68

DiLucia, a building contractor, constructed certain improvements at the request of appellee Clemens to the offices of Unicom, Inc. ("Unicom"), a corporation of which Clemens was an officer and principal shareholder. In April 1968 DiLucia was compensated for this work, and in addition Clemens created the declaration of trust obligating himself as trustee to transfer 2,000 shares of Unicom to DiLucia. At the time of the creation of the trust the stock was restricted. DiLucia paid $2,000 for the stock which was its fair market value. At the time and all relevant

times thereafter, Clemens personally held in excess of 25,-000 shares of stock in the corporation. The shares were fungible. Clemens made no attempt to segregate DiLucia's 2,000 shares. In June 1972, Unicom began to offer its shares on the public market. Clemens did not transfer legal title of the shares to DiLucia pursuant to the declaration of trust.

Thereafter, the facts are disputed. Clemens alleges that he and DiLucia agreed on a settlement of various claims from subsequent business transactions which included a release of DiLucia's rights under the 1968 declaration of trust. DiLucia acknowledges the settlement but denies he relinquished his claim to the Unicom shares. In 1981, DiLucia requested the delivery of the shares. Clemens refused, and DiLucia brought this action in equity to enforce the trust.

The trial court denied DiLucia relief. It found that the settlement included a release by DiLucia of any claims for Unicom stock and for the $2,000 DiLucia had paid in 1968. It also concluded that the declaration of trust did not establish a trust but instead established a contract. The trial court further concluded that DiLucia failed to pursue his claim within the applicable statute of limitations for the contract and that Clemens was prejudiced by DiLucia's delay. DiLucia's timely exceptions were dismissed and DiLucia appealed.

Our standard of review as to the findings of a court in equity is well established. "Facts found by the chancellor, when supported by competent evidence in the record, are binding. However, no such deference is mandated for conclusions of law, and we are at liberty to review such conclusions." *Presbytery of Beaver–Butler v. Middlesex Presby. Church*, 507 Pa. 255, 266, 489 A.2d 1317, 1323 (1985), *cert. denied* 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985). We will not reverse on appeal unless the trial court abused its discretion or committed an error of law. *Valley Forge Hist. Soc. v. Washington Mem. Chapel*, 330 Pa.Super. 494, 479 A.2d 1011 (1984).

## I. CREATION OF THE TRUST

We first consider whether the trial court erred in concluding that a valid trust was not created and that the purported trust was actually a contract. The trial court reasoned that a valid trust was not created because there was no identifiable res. The court reasoned that the shares were not identified or segregated. Furthermore, the court reasoned that at the time of the creation of the trust, the stock was restricted and therefore not transferable into the trust. We find the court's rationales and conclusion to be without foundation.

An analysis of the creation of a trust generally begins with a consideration of the intent of the parties. *E.g.,* *Buchanan v. Brentwood F.S. & L. Assoc.,* 457 Pa. 135, 320 A.2d 117 (1974). Clemens concedes that he intended to create a trust. *Id.,* 457 Pa. at 143–44, 320 A.2d 117 (citations omitted). In the case sub judice however, Clemens does not argue lack of intent to create a trust relationship.

An essential element in the creation of a trust is the existence of the subject matter or res of the trust at the time the trust is created. It is axiomatic that a "trust arises when by a sufficient declaration of its terms, the three following elements concur: sufficient words to create it, a definite subject matter, and a certain or ascertained object." *Pugh v. Gaines,* 156 Pa.Super. 613, 615, 41 A.2d 287, 288 (1944). "A trust cannot be created unless the subject matter is definite or definitely ascertainable." Restatement (Second) of Trusts § 76 (1959).

The subject matter or res of the trust is 2,000 shares of Unicom which, under the terms of the trust, Clemens was under a duty to transfer to DiLucia. Although Clemens never segregated, designated or described the shares specifically, the identity of the shares was clear and the description sufficient because the shares were fungible. It is immaterial that no specific shares were isolated and held in trust.

> It is the identity of the [trust] fund, not of the pieces of coin or bank notes, that controls.... Where the agent

has mingled his own property with that of the principal, the latter may reclaim from the admixture an amount equal to his own, although it may not be the same identical property.... and where a trustee has mingled trust funds with his own, and afterward takes sums from the common mass for his own use, it will be presumed, so long as the mass is as large as the original trust funds, that the sum so taken was his own and not the trust funds.

*Vosburgh's Estate*, 279 Pa. 329, 333, 123 A. 813, 815 (1924). *See Rollestone v. National Bank of Commerce*, 299 Mo. 57, 252 S.W. 394 (1923) (valid declaration of trust when owner of over a million shares of mining stock stated that he was carrying 10,000 shares of said fungible stock at a fixed price for his friend who had assisted him in raising the money to purchase some shares; the stock was not more specifically described); *see also, People v. Lyon*, 82 A.D.2d 516, 442 N.Y.S.2d 538 (1981) (prohibition against commingling is not a sine qua non of a trust). It is not fatal to the creation of the trust that Clemens failed to segregate specific shares.

Alternatively, the trial court reasoned that even if it were not necessary for Clemens to segregate the shares of stock, the trust res did not come into existence, because at the creation of the trust, the 2,000 shares were restricted, and their transfer into the trust was impossible.

Although it is hornbook law that a trust can not be created with property that is not transferable into the trust, Restatement (Second) of Trusts 79 (1959), we find that it is unnecessary to address whether the restricted shares in question were transferable,[1] because, "[i]n the case of declarations of trust, [where] the declarant already owns the property no transfer of title to a trustee is need. He ceases to hold for his own benefit and thereafter holds for the benefit of another." BOGERT, HORNBOOK ON TRUSTS, § 32 (6th ed. 1987). Since Clemens was both settlor and

---

1. We note that the record is devoid of any information regarding the nature and purpose of the restriction.

trustee, no specific transfer into the trust was required. We therefore conclude Clemens held the shares in trust for DiLucia whether or not the restriction permitted transfer of the shares. The trial court therefore erred in concluding that a valid trust was not created.

## II. REVOCATION OF THE TRUST

 We now consider whether there is sufficient evidence in the record to support the trial court's finding that the parties revoked the trust by oral agreement. Having averred revocation or release as an affirmative defense, Clemens is charged with the burden of proof on the question. We note initially that a trust may be orally revoked. *Estate of Vittorio*, 290 Pa.Super. 329, 434 A.2d 777 (1981) (Totten trust). However, "the declaration relied upon to terminate a ... trust must clearly, unequivocally and decisively establish a present disaffirmance and revocation thereof." *Id.*, 290 Pa.Super. at 335, 434 A.2d at 781. Although *Vittorio* applied this standard where a tentative trust was at issue, the protection that the law affords a trust relationship mandates application of this standard to the express trust sub judice.

 The record reveals that Clemens testified that at a settlement in 1976, he and his father paid $200,000 to DiLucia and business associates of DiLucia for property worth $160,000 to satisfy certain unrelated options and debts. Clemens asserts that under the settlement DiLucia also released claim to the 2,000 Unicom shares in trust. Clemens testified vaguely that the transaction was to "clear the decks" and that he understood that DiLucia had waived his claim to the 2,000 shares. N.T., March 3, 1986 at 74–75, 81–82, 87. Although Clemens testified to the location of the settlement meeting, he did not testify clearly and with specificity that DiLucia released his claim to the 2,000 shares. Moreover, Clemens' testimony is not consistent with his conclusion that the $200,000 would "clear the decks" because Clemens also testified that he made additional payments to the DiLucia business associates in rela-

tion to the unrelated option agreements, thereby raising the inference that the $200,000 payment did not "clear the decks." The testimony about the release is vague and uncertain. We find that the record evidence does not clearly, unequivocally and decisively support an oral revocation of the trust. Therefore, the trial court's finding that the settlement released Clemens from his obligation under the declaration of trust cannot be sustained.

### III. LACHES

■ Lastly we consider whether the trial court erred in concluding that DiLucia's claim was barred by laches. Laches may be applicable to enforcement of a trust instrument. *Truver v. Kennedy*, 425 Pa. 294, 229 A.2d 468 (1967); *Kehoe v. Gilroy*, 320 Pa.Super. 206, 467 A.2d 1 (1983). In order to prevail on his assertion of the equitable defense of laches, Clemens must establish both undue delay from DiLucia's failure to exercise due diligence and prejudice resulting from the delay. *Nicholson Co. v. Pennsy Supply, Inc.*, 362 Pa.Super. 307, 524 A.2d 520 (1987). Application of "laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice." *Truver*, 425 Pa. at 309, 229 A.2d at 475.

■ The record reveals that under the 1968 declaration of trust Clemens had a duty to transfer legal title of the stock to DiLucia in 1971. Ten years later, in 1981, DiLucia first made a demand for transfer. He testified that he regarded the declaration of trust as the equivalent of the 2,000 shares and that he simply put the declaration of trust with his other stock certificates. He asserted he made the demand for the shares only after he decided to sell them.

Our first inquiry is whether the ten-year time interval prejudiced Clemens. We conclude that Clemens failed to meet his burden of showing prejudice. We therefore need not examine whether, under the circumstances of the in-

stant case, the ten-year interval constituted an undue delay due to lack of due diligence. *See Leedom v. Thomas, supra.*

To show prejudice, Clemens must show that "some change in the condition or relations of the parties [occurred] during the period the complainant unreasonably failed to act." *Kehoe v. Gilroy,* 320 Pa.Super. at 208, 467 A.2d at 5 (quoting *Leedom v. Thomas,* 473 Pa. 193, 200, 373 A.2d 1329, 1332 (1977)).

> The prejudice required is established where, for example, witnesses die or become unavailable, records are lost or destroyed, and changes in position occur due to the anticipation that a party will not pursue a particular claim.

*Class of 200 Admin. Fac. Mem. v. Scanlon,* 502 Pa. 275, 279, 466 A.2d 103, 105 (1983) (citations omitted). Clemens failed to show any change in position because DiLucia did not pursue his rights under the declaration of trust more promptly. Clemens' testimony indicates that the delay made it difficult for him to locate certain option agreements. However, Clemens never established the relevance of those agreements to the trust. In addition, Clemens argued that the cost of delivering the shares in 1981 was higher than in 1971, as was his attendant tax liability. Since throughout the relevant time period, he retained at least 25,000 shares, any increase in value was unrealized. He failed to show any reliance on this increase in value. Moreover, his argument that he would be prejudiced by an increase in tax liability is merely a bald assertion. The vague assertion of a difference in tax liability and the difficulty in finding documents with unestablished relevance to the trust do not establish the required showing of prejudice.

Order reversed. Case remanded so that the court may consider appropriate relief. Jurisdiction relinquished.

CIRILLO, President Judge, files a concurring opinion.

CIRILLO, President Judge, concurring:

While I agree with the result reached by the majority, I believe that the central issue of the transferability of the res was not adequately addressed. Since this goes directly to the validity of the trust, and hence the holding of the case, I write separately.

Clemens, the settlor and trustee, argues that, because the stock was "restricted" when the trust document was executed, it could not be the subject of a trust. He also asserts that the subject matter was not sufficiently identifiable. For these reasons Clemens argues that no trust was created. Alternatively, he argues both parol revocation and laches, saying that any rights DiLucia may have had were released by him as part of a 1976 settlement and, if they were not, DiLucia has waited too long to assert them. DiLucia, as beneficiary of the trust, argues that Clemens has not yet discharged his fiduciary duty under the agreement, that Clemens produced no evidence of prejudice resulting from DiLucia's delay in enforcing his rights under the trust and that, contrary to the chancellor's findings, the claimed release was not proven. There is no dispute between the parties that there was an intention to create a trust. Because I am in agreement with the majority that the chancellor erred in finding a contract rather than a trust, with its discussion of the identification issue and with its holding concerning the defenses raised by appellee, I will confine my discussion to the transferability of the res.

The majority notes that, because the settlor and trustee were the same person, no transfer was required. While this is true, whether or not a transfer was required is clearly a distinct issue from whether or not the res was capable of being transferred. Therefore, I cannot agree with the majority's conclusion that, because a transfer was not required under the facts of this case, it is unnecessary to address the transferability of the shares in question. Transferability of the subject matter is one of the requisites of a valid trust. Restatement (Second) of Trusts § 79 (1959).

The law will not presume an obligation to give away one's property. It is, therefore, axiomatic that the burden of proving an alleged trust is on the party asserting its existence. However, where there is a written, executed declaration of trust which is authenticated according to the rules of evidence and which contains, on its face, the necessary elements of a trust, this burden has been met. The burden of defeating an authenticated, facially sufficient trust document must fall to him who challenges its validity. *See First Federal v. Great Northern*, 282 Pa.Super. 337, 422 A.2d 1145 (1980) (writing is sufficient evidence of trust if beneficiary, trust property, and purposes of trust are set forth). The writing speaks for itself and, in this case, there is nothing on the face of the declaration of trust which mandates a finding of invalidity. Therefore, if the beneficiary's rights under the trust are to be denied enforcement, Clemens must have shown that, for reasons not evident within the document, the trust was fatally flawed.

The subject matter of the trust *sub judice* was 2,000 shares of Unicom, Inc.'s stock, legal title to which remained with the settlor. Clemens testified that he could not transfer the stock to DiLucia outright because it was "restricted." He therefore executed the declaration of trust he now challenges for that very reason. As the majority noted, however, there was no evidence as to the nature of this restriction. The record supports an inference that it was legal title which could not be transferred; the evidence did not show that the beneficial interest was inalienable nor that Clemens' rights in the stock would be forfeited upon his attempt to transfer any interest in it. Absent evidence of this sort, Clemens could not prove that neither the legal nor the equitable interest in the stock was nontransferable. In fact, the declaration of trust acknowledged that DiLucia, who had furnished consideration, was the equitable owner of the stock. This recital that DiLucia was the equitable owner is an admission by Clemens that the beneficial interest in the stock had already been transferred, and therefore, that at least that portion of the stock was transferable. 1 G. Henry, Pennsylvania Evidence § 91 (1953).

Clemens' inability to title the stock in either DiLucia's name, or in his own name as trustee, did not make the stock unsuitable subject matter for a trust. Restatement (Second) of Trusts § 80, which delineates an exception to Section 79 (property which the owner cannot transfer cannot be held in trust), states:

If property is not transferable for a reason applicable only to the transfer of the legal title to the property, it can be held in trust.

Comment (a) to the above section explains:

If the reason why certain property is not transferable is applicable only to the legal title to the property and not to the beneficial interest, the owner of such property can effectively declare himself trustee of the property, although he cannot transfer the property in trust.

A review of the record shows that Clemens did not prove his allegation that the trust failed because the res was not transferable. The equitable ownership having already been transferred at the time of the creation of the trust, Clemens' argument that his inability to transfer legal title prevented the trust from coming into existence is of no avail. It is clear that limited interests in property may be held in trust. Restatement (Second) of Trusts § 77 (1959). In this case, it was the legal ownership of the stock which was held in trust. The declaration of trust supports this conclusion by referring to DiLucia as the equitable owner of the stock and by imposing the duty to transfer legal title at the end of its term. I agree with the majority that a valid trust was created.

I would also note the law's view of a trustee who challenges a trust under which he has accepted duties:

It is the duty of a trustee to support the trust and not to aid in any way in attacking or undermining it. . . . It is a fundamental principle never to be departed from, and is as binding as any axiom of the common law, that he who takes upon himself a trust, takes it for the benefit of him for whom he is entrusted, and will not be permitted to set up the invalidity of the act of its creation.

*Carter v. Carter,* 321 Pa. 391, 396, 184 A. 78, 80 (1936). *Accord In re Briggs' Estate,* 150 Pa.Super. 66, 27 A.2d 430 (1942) ("It is a complete answer to [trustees contention that creation of trust was invalid] that the trustees are not in a position to make it."). I believe this applies with special force to a trustee who is also the settlor. Clemens was in a position of superior knowledge with regard to the stock and any applicable restrictions. DiLucia was justified in relying on Clemens' representation, as evidenced by the wording in, and execution of, the trust document, that Clemens could transfer the equitable interest to him and that legal title would be transferred in the future. As the settlor of the trust, Clemens is equitably estopped from asserting its invalidity in an attempt to avoid fulfilling the obligation he assumed under its terms.

That this duty could not have been discharged at the end of the three years specified in the 1968 declaration of trust does not help Clemens' argument. While a trustee has no duty to comply with a term of the trust which is impossible of performance, if this impossibility is temporary, the trustee is under a duty to comply after the impossibility has been removed. Restatement (Second) of Trusts § 165(1), comment c (1959). At the time of the creation of the trust, Clemens evidently expected that he would be able to transfer legal title later; the fact that he erred in estimating he would be able to do so in three years is not fatal to the trust and does not work to the detriment of the beneficiary. Even though in 1971 he could not have titled the stock in DiLucia's name, Clemens should have distributed the stock to DiLucia in 1972 when the stock began to be publicly traded. Failure to do so constituted a breach of trust.

Further, Clemens' argument that "it was incumbent on [DiLucia] to insure that the shares were transferred in 1971" is incorrect. The burden of administering the trust according to its terms is on the trustee. Restatement (Second) of Trusts § 169 (1959). DiLucia's failure to immediately demand performance by the trustee or to immediately bring an action in equity did not relieve the trustee of his

obligation. Until he makes distribution of the res, Clemens remains in his fiduciary capacity with regard to DiLucia. A trustee's duty continues until the trust is finally terminated by distribution of the trust property. *In re Thaw's Estate,* 163 Pa.Super. 484, 63 A.2d 417 (1949). *See also Swoboda v. U.S.,* 69 T.C. 500, *aff'd* 258 F.2d 848 (1958). Because we find that Clemens did not show prejudice as a result of DiLucia's delay in bringing this action, Clemens' duty to transfer legal title to DiLucia is still extant.

For the foregoing reasons, I concur in the result reached by the majority.