## Stewart et al., Appellants, *v.* Madden.

[Marked to be reported.]

*Trusts and trustees—Discretion for benefit of cestui que trust.*

When a trust created by deed of the cestui que trust for her own benefit gives discretionary power to the trustee to apply so much of the principal of the trust estate for the benefit of the cestui que trust as he shall deem necessary, the discretion in the trustee is a legal discretion which might, on presentation of a proper case, be constrained for the benefit of the cestui que trust : Erisman v. Directors., 47 Pa. 509, followed.

*Liability for debts—Particular terms of trust.*

The creator of a trust conveyed her legal title to a trustee, reserving (1) the income, (2) the right to call on the principal in case of necessity, and (3) absolute testamentary power of disposition of the residue. By the terms of the conveyance the whole estate could have been exhausted for her benefit in her lifetime or bequeathed by her to a stranger ; and, therefore, there is no reason why it should not be liable for her debts.    Where the orphans' court orders a sale for the payment of her debts, it will be presumed they were for necessaries, and that her husband was unable to pay them.

*Finality of decree of orphans' court—Estoppel—Ejectment.*

The orphans' court having decreed and confirmed a sale of the land for payment of the debts of the cestui que trust, and plaintiff's grantor having had his day in court, plaintiff is thereby estopped in an action of ejectment from claiming title to the land, thirty years afterward, as against defendant, the purchaser at the sale : Grindrod's Est., 140 Pa. 161, applied.

Argued Oct. 19, 1892.    Appeal, No. 126, Oct. T., 1891, by plaintiffs, M. A. Stewart and Amanda Stewart, his wife, in her right, from judgment of C. P. Mercer Co., Jan. T., 1887, No. 107, upon special verdict for defendant, Charles Madden. Before STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Ejectment in 1886 for undivided half of tract of land.

On the trial, before MEHARD, P. J., the jury found the following facts in the nature of a special verdict: On Nov. 17, 1854, Letitia Robinson and her husband Jackson Robinson made a deed to Chas. D. Everett, Jr., for the tract of land in dispute. "Also all her right, title, interest, property, claim and demand of and in the moneys and property bequeathed to her herein by Dr. Charles D. Everett, late of Albemarle county,

Virginia, in his last will and testament duly proved and registered in said county of Albemarle, to be held by the same Dr. Charles D. Everett for the following uses and trusts, to wit : To pay to the said Letitia Robinson the interest annually, and so much of the principal of said legacy from time to time as the said trustee shall deem necessary for the benefit of said cestui que trust ; the balance remaining at her death to go to, and be vested in such children as were born after the 4th day of October, 1853, in equal shares, the children of a deceased child born after the 4th day of October, 1853, if any, to take by representation of their ancestor.

" The said trustee to have power to invest the amount received under said last will and testament, and to change said investment at pleasure, in such manner and as often as he may think proper, and the said trustee to have power to sell and convey the said real estate in the lifetime of the said Letitia Robinson and invest the proceeds in other real estate to be held in trust for the same purposes, or he may convert land into money and appropriate the interest and principal as hereinbefore directed as to personal estate, or money into land and hold the same subject to the same uses and purposes as hereinbefore prescribed as to real estate, and further the said Dr. Charles D. Everett shall have power at any time he shall think proper to renounce the trust herein created and to vest the same by deed in any other person he may select for the purpose, and by delivery and payment of said trust estate and property to said trustee, divest himself of the same, which said trustee thus appointed and invested with the trust shall hold the same, with the same proviso and for the same purposes as are hereinbefore set forth ; and further it is declared and provided that the rents, issues and profits of the real estate held by the said trustee, or by any one appointed by him, shall be subject to the right of the said Letitia to receive and enjoy, and to be for her sole and separate use during her natural life, and the same as well as the residue of the personal property mentioned in the deed remaining at her death, shall be transferred and delivered to her children born after the said 4th day of October, 1853, in the absence of any testamentary provision by her, the children of any such deceased child if any to take by representation but should she make a valid last will and testament, then

the said real and personal estate to go to her devisees and legatees."

Letitia Robinson continued to reside on this land until her death in October, 1859.

By her will she devised the land to her husband for life, and after his death to her two sons Richmond Robinson and James Robinson in fee.

Following the death of Letitia Robinson, her executor applied to the orphans' court of Mercer county for an order to make sale of the land for the payment of her debts. Proceedings were had under this petition and an auditor appointed. After the report of the auditor, finding that debts existed, a decree was made for the sale of the land for payment of debts. Land was sold to Charles Madden, and conveyed to him by the executor by deed dated Sept. 9, 1862, made in pursuance of the sale in the orphans' court. Thereafter the purchaser, Charles Madden, commenced proceedings before two justices of the peace to obtain possession by virtue of his purchase. These proceedings were against Jackson Robinson, who was then in possession of the land. After judgment in favor of the plaintiff in those proceedings, an appeal was taken by the defendant, Jackson Robinson, and they were brought into the court of common pleas. Judgment was recovered by Madden, and, on appeal to the Supreme Court, a non pros was entered. On a habere facias, verdict and judgment were had against Jackson Robinson, and defendant, Chas. Madden, obtained and entered into possession on Sept. 20, 1863, and has maintained possession ever since.

Following the sale of the real estate of Letitia Robinson, an auditor was appointed. The executor filed an account embracing the very fund realized from the sale of real estate which was distributed to the payment of the debts of Letitia Robinson by the auditor.

Jackson Robinson, the husband of Letitia Robinson, died May 17, 1879, and, on Sept. 21, 1886, Richmond Robinson conveyed a one half interest in the land to plaintiff.

The court, in an opinion, entered judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) entry of judgment for defendant; (2) failure to enter judgment for plaintiff.

*Q. A. Gordon, S. H. Miller* with him, for appellant.—The trust was held void by the court below, because it attempted to withdraw property from creditors and yet retain the control of it: Mackason's Ap., 42 Pa. 330, was not the case of a married woman but a party sui juris. It is therefore not an authority in point. Lancaster v. Dolan, 1 Rawle, 246; Thomas v. Folwell, 2 Whart. 11; Bank v. Denig, 131 Pa. 241; Quin's Est., 144 Pa. 444, all show that trusts for married women are favored: MacConnell v. Lindsay, 131 Pa. 476.

*B. Magoffin, S. Griffith & Son* with him, for appellees.—The principle upon which the trust was held void was that one sui juris cannot settle his property as against creditors in trust for his life and over to his heirs or his appointees by will. Such property is assets in hands of the trustee for payment of debts: Mackason's Ap., supra.

OPINION BY MR. JUSTICE STERRETT, January 3, 1893:

In Erisman v. Directors, etc., 47 Pa. 509, a gift having been made in trust for a feme covert with discretionary power in the trustee to apply any part of the trust estate for the benefit of the cestui que trust, " if urgent necessity shall require," this court held (1) that the discretion here given was but legal, and whenever the law determined that a proper case had arisen, in which the trustee's discretion should have been exercised in a particular way, he would be constrained to act in accordance therewith; and (2) that the adjudication of lunacy of the cestui que trust, and the indigence of her husband fixed the fact of " urgent necessity," and the consequent liability of the trust estate.

Substantially the same provision is made in Mrs. Jackson's conveyance. She expressly gave her trustee discretionary power to use " so much of the principal" of the trust estate as he " shall deem necessary for" her " benefit; " and, in harmony therewith, reserved to herself the power of absolute testamentary disposition of the residue. Here is a legal discretion which the court might, on presentation of a proper case, have constrained for the benefit of Mrs. Jackson. That such a case was presented to the orphans' court, in the proceedings for sale, seems clear. The adjudication that Mrs. Jackson had left unpaid debts implied that these were for necessaries, and the order of sale, that her husband was unable to pay them. This

fixed the fact of "necessity" and the consequent liability of the trust estate; else debts could not have existed, nor sale have been made: Act of 1848.

The plaintiff has no equity to sustain her claim of title. Her grantor's mother was the absolute owner of the land when she created the trust; and while, by her conveyance, she divested herself of the legal title and active management, its manifest purpose was to promote her own personal benefit. She expressly reserved (1) the income, (2) the right to call on the principal, in case of necessity, and (3) the power of absolute testamentary disposition of the residue. Thus, by the very terms of the conveyance, the whole estate could have been exhausted for her benefit in her lifetime, or bequeathed by her to a stranger. Then why should not the land have been liable for her debts? The interest of plaintiff's grantor was but contingent in his mother's lifetime; and plaintiff now stands here as a mere volunteer claiming through Mrs. Jackson's will. She does not deny that the debts, for which the land now claimed by her was sold, were Mrs. Jackson's; her grantor was a party to the proceeding, which judicially ascertained the existence of these debts, under which sale was made for their payment, and upon the faith of which defendant became the purchaser, paid the price and took possession. As was said in Grindrod's Estate, 140 Pa. 161: "Something is due to the finality of judgments. The orphans' court, after such a lapse of time (10 years), has no power, unless, perhaps, in the case of a fraud practiced upon it, to set aside the sale and vacate its own decree. If it might do so after ten years it might do so after a hundred." Here thirty years have elapsed since the sale made under the order of the orphans' court, and the record so made remains unimpeached. If it is unimpeachable by direct application to the orphans' court, much less can it be nullified by collateral attack. The plaintiff's grantor had his day in the orphans' court, and his grantee, the plaintiff, is thereby estopped from claiming title as against this defendant.

This view renders unnecessary any discussion of the question upon which the argument of counsel mainly turned, whether or not a feme covert can by voluntary conveyance exempt her seperate estate from her debts thereafter created.

Judgment affirmed.