## Saurmann's Estate

The facts appear from the following extracts from the adjudication of

SHEELY, P. J., fifty-first judicial district, specially presiding, auditing judge.—The first and final account of Gabrielle Saurmann and Albert P. Gerhard, testamentary trustees, as stated by Albert P. Gerhard, surviving testa-

mentary trustee, was examined and audited by the court on April 9, 1940 . . .

Four exceptions to the account were filed on behalf of Ada Guss, sole residuary legatee under the will of Alice Saurmann, deceased. . . .

The third exception is to the payment of $3,500 from principal to Gabrielle Saurmann, life tenant, on June 26, 1939. The payment was made under the provisions of the second paragraph of the will of Alice Saurmann, deceased, wherein she gave the residue of her estate to her trustees to pay the net income therefrom to her sister, Gabrielle Saurmann, during her life, "also any part or all of the principal of my said residuary estate at any times or time, if my trustees deem it necessary for the comfort of my sister." The testimony shows that Gabrielle Saurmann, who was also one of the trustees, was about 70 years of age, and was blind, or nearly blind, at the time of her death. She worried about her financial condition and as she grew older her worry increased, and she was afraid she could no longer reside at the Montgomery Inn where she had resided for a number of years. The income from her trust estate (about $600 per year) and from her personal securities (about $300 per year) was sufficient to pay her board and lodging, but she frequently called upon Mr. Gerhard, her cotrustee, to be assured that she could afford to continue living at the inn, and that she would have sufficient means to provide for her during the remainder of her life. He repeatedly advised her not to worry because she had the right to use the principal of the trust fund if necessary. In June 1939 she requested payment to her of $3,500 from principal, telling Mr. Gerhard that she would like to have this money in her own possession so that she would feel she had it. The payment was made by the transfer of securities to that amount.

The securities thus transferred to Gabrielle Saurman from the trust estate were not sold by her and, at her death in October, 1939, constituted a part of her estate which, including these securities, amounted to more than

$16,000. At the time the securities were transferred, she had checking and savings accounts totalling $5,629.84, which fact was unknown to Mr. Gerhard and to her friends, all of whom thought that she was compelled to depend upon her sister's estate and upon charity.

The primary purpose of Alice Saurmann was to provide for her sister's comfort. In addition to giving her the net income of the trust estate, she also authorized the trustees to pay to her any part or all of the principal if the trustees deemed it necessary for her comfort. It was her intention to impose a broad discretionary power in the trustees to the end that her sister should not lack any of the comforts of life. At the same time, however, she did not mean to give her whole estate to her sister without restriction, but only such portion as was found necessary for her comfort: Endsley v. Hagey et al., 301 Pa. 158, 163 (1930). The fact that she created a trust, and named Mr. Gerhard as cotrustee with her sister, and provided for the disposition of the remainder, indicates that she expected a remainder to exist.

"Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion": A. L. I. Restatement of Trusts, §187. See Beaumont's Estate, 195 Pa. 1 (1900), and Bailey's Estate, supra. In Tyson's Estate, 191 Pa. 218, 228 (1899) the rule was stated:

"The test in all such cases is the good faith of the action of the beneficiary. If it is an honest exercise of the discretion with which the testator has clothed him his action is conclusive, but he cannot be permitted to make use of the mere form to defeat or evade the true intent and pervert the gift to a different purpose." In Endsley v. Hagey et al., supra, p. 163, it was stated:

"So long as the life tenants do not deplete the corpus for the mere purpose of defeating the testator's intention, 'courts will be slow to condemn expenditures as being contrary to the power granted' ".

The underlying test in all the cases is the good faith of the trustee and the beneficiary in exercising the power given in carrying out the intent of testator: Williams' Appeal, 73 Pa. 249, 284 (1873); Naglee's Estate, 52 Pa. 154, 159 (1866); Stewart et al. v. Madden, 153 Pa. 445 (1893); Walters' Case, 278 Pa. 421, 425 (1924).

Under the testimony in this case there is no evidence of bad faith on the part of Mr. Gerhard, and if he were the sole trustee the exception would be dismissed. As to Gabrielle Saurmann, however, the situation is different. She was a cotrustee and as such had equal responsibility with Mr. Gerhard to carry out the intention of testatrix. She did not inform her cotrustee of her true financial condition when she requested the transfer of a portion of the principal to her, and after the portion of the principal was transferred she retained the securities in kind. We agree with counsel that "her comfort may embrace a variety of things": Zumbro v. Zumbro, 69 Pa. Superior Ct. 600 (1918); but the intention of testatrix was merely to provide that which was "necessary for her comfort." The contention that because of her worry about her financial condition it was necessary for her comfort that a portion of the principal be transferred to her, cannot prevail. If this should apply to a transfer of 20 percent of the principal, it would likewise apply to all of the principal, and the intention of testatrix to dispose of the remainder would be frustrated.

The fact that the securities were retained in kind is important. We have no doubt that the discretion imposed in the trustees was sufficiently broad to allow an expenditure of principal for anything which they deemed necessary for the comfort of the beneficiary. In the present case, however, no portion of the principal was expended, but the securities comprising a portion of the principal were transferred to the beneficiary. Thereby she would continue to receive the income therefrom, as contemplated by testatrix, and would also have the right ultimately to dispose of the securities not as she and her co-

trustee deemed necessary for her comfort, but as she alone deemed necessary for her comfort. Testatrix undoubtedly had a reason for naming two trustees, and cotrustees must join in executing the trust: Coxe, Trustee, v. Kriebel et al., 323 Pa. 157, 166 (1936).

It seems clear that Gabrielle Saurmann did not fully understand and appreciate her duties as a trustee or the real intent and purpose of the will of her sister. To her as beneficiary, her need for funds with which to provide her living expenses was very real, but the effect of her action amounts to bad faith and abuse of her discretion as a trustee. The exception to the transfer to her of securities in the amount of $3,500 must be sustained and the executor of her will directed to retransfer such securities to the estate of Alice Saurmann, deceased, together with any income accruing thereon since the date of Gabrielle Saurmann's death on October 24, 1939. . . .

*Harold D. Saylor*, for exceptant.

*George A. Purring, Henry M. Keller, Elmer C. Pfeiffer*, and *Henry W. Koons*, contra.

HOLLAND, P. J., October 16, 1940.—On June 5, 1940, Louise Houston, a legatee under the will of Gabrielle Saurmann, deceased, filed six exceptions to the adjudication; and, on June 10, 1940, filed a seventh exception thereto. The seven exceptions may be considered together as they raise the sole question as to the propriety of the auditing judge sustaining the exception to the transfer to Gabrielle Saurmann of securities in the amount of $3,-500 and directing her executor to retransfer such securities to the estate of Alice Saurmann, deceased, together with any income accruing thereon since the date of the death of Gabrielle Saurmann, October 24, 1939.

We have not heard, in the argument of the exceptions, nor can we find in the briefs of counsel, any argument that impels us to the conclusion that the auditing judge committed any error in the sustaining of this exception and in the action pursuant thereto. A reconsideration of

634

the adjudication confirms us in the opinion that the action of the auditing judge was the proper one, and the seven exceptions must be dismissed upon the grounds and for the reasons set out by the auditing judge in the adjudication.

And now, October 16, 1940, the seven exceptions to the adjudication are dismissed and the adjudication is confirmed absolutely.