## Keller Estate

38

*Walter B. Hays,* for accountant.

*Charles H. Still* and *Raymond R. Smith* and *C. Philip Moore, Jr.,* for petitioner.

GROSS, P. J., April 18, 1952.—Virginia A. Keller, a single woman, by her irrevocable trust agreement, in writing, containing spendthrift provisions, dated December 14, 1945, placed in the York County National Bank of York, Pa., the cash sum of $2,686.22, in trust, to pay to her immediately the sum of $100 and to invest and reinvest the balance, and from the income and/or the principal to pay her annually during her lifetime, in quarterly installments the sum of $150, and upon her death to pay her funeral expenses and debts, with remainder over to her grandmother, Nora McSherry, if living, and if she is deceased then to Louis Faley and Mary Jane Neel, in equal shares, and if either of them are then deceased, their issue to take their share per stirpes.

The trust agreement further provided that, in addition to the annual payment of $150 to settlor, the trustee *may in its sole discretion expend such portion of the income or principal of the trust as it deems expedient, for the maintenance, support or medical care of the party of the first part.*

On February 15, 1952, settlor filed her petition in this court, asking that the trust be terminated for the following reasons:

(a) The corpus of the trust has been diminished to the point where it will, after trustee's commission, meet only current expenses of petitioner.

(b) Petitioner is unable to work because of illness and a recent injury and is totally dependent upon the trust fund for support.

(c) Petitioner has numerous outstanding medical bills as a result of her illness.

(d) The funds remaining in the trust would serve to clear her obligations and gain a new and unencumbered beginning in harmony with the trust purpose.

The petition was joined in by Nora McSherry, Louise Faley and Mary Jane Neel, remaindermen.

We awarded a citation upon the trustee to show cause, to which the trustee responded by filing its account on February 29, 1952, showing a balance in its hands, exclusive of its own compensation and counsel fees, in the sum of $779.05, made up of principal $774.26 and interest $4.79, which account is now before us for adjudication.

In addition to filing its account, the trustee also filed an answer, setting forth, inter alia, insofar as is pertinent to the issue, as follows:

(a) A denial that the trust should be terminated because the purpose of the trust has been served.

(b) That it has no knowledge of the truth of the averment that settlor is unable to work because of illness and a recent injury, resulting in numerous outstanding medical bills and that settlor is wholly dependent upon the trust for her support.

(c) That the trust cannot be terminated because it is irrevocable by its express terms, contains spendthrift features and a provision for the payment of settlor's funeral expenses.

(d) That all of the parties in interest in the remainder have not joined in the petition and cannot be determined until the death of settlor.

In the first place, may we say that this trustee's opposition to the termination of this trust, as stated by its counsel, is a legal position only. It has no desire to continue the trust any longer than to fulfill its legal duty. It is not profitable business for the trustee, but the trustee cannot legally consent to its termination.

40

If the corpus of this trust were a large sum of money instead of a small sum our problem might be more difficult to solve and, although the same principles of law are applicable in determining whether or not a small or large trust should or can be terminated, we can more easily arrive at a conclusion as to whether or not the real purpose of a small trust has been served and the original reason for its creation continues to exist.

A trust agreement, like a will, must be construed from its four corners, in order to arrive at the true intent of settlor. It is not what settlor meant to say but what were his intentions as gathered from what he actually said that governs.

Reading this trust instrument from its several angles, it seems clear beyond any doubt that the primary and dominant intent of this settlor was to create an annual income of $150 for her living purposes under normal conditions of good health and that, under conditions of failing health (an averment in the petition and not denied in the answer), she expected to receive additional payments for her support, the amount of which she expressly left in the sole discretion of the trustee.

The account of the trustee shows that it has already paid to settlor out of principal the sum of $1,898.46, and the trustee contends that, to make further payments out of principal would so deplete the fund that there would not remain enough money in it to pay settlor's funeral expenses. But, as we interpret the trust agreement, the primary purpose of the trust was to provide an income for settlor's support and that the payment of her burial expenses were entirely secondary in character.

It is not denied that settlor is now in bad health and in need of additional payments for her support.

The sole discretion lodged in the trustee to make these additional payments is a legal discretion, and it

has frequently been held that the exercise of such discretion by trustees is subject to the limitation that they must not act outside the bounds of reasonable judgment. How wide that field is depends upon the terms of the trust, the nature of the power and all the circumstances. Where a proper case has arisen in which the trustee's discretion should have been exercised in a particular way, he will be constrained to act in accordance therewith: Briggs' Estate, 150 Pa. Superior Ct. 66; Walters' Case, 278 Pa. 421; Stewart v. Madden, 153 Pa. 445; Seacrist Estate, 362 Pa. 190.

We are not unmindful of the fundamental principles of law relating to the termination of an irrevocable spendthrift trust as pointed out by this trustee, but we also have in mind the clear intent of settlor to first provide for her support by means of the trust and, after giving full consideration to the peculiar facts of this case, we feel that settlor should be allowed to unwind her original transaction.

We think this conclusion is in complete harmony with the doctrine held by Judge Bok in Rehr v. Fidelity-Philadelphia Trust Company, 37 D. & C. 324; Posey's Estate, 52 D. & C. 127, and Auchu's Estate, 38 D. & C. 33.

We might direct, as was done in Miller's Estate, 33 Berks 89, that the small balance in the trustee's account be paid in periodical installments until exhausted, but that procedure would only result in further accounting and in extra cost and delay in settlor getting the full benefits of the trust, which she seems to need promptly.

We enter the following

### Decree

And now, to wit, April 18, 1952, it is hereby ordered, adjudged and decreed that the trust created by Vir-

ginia A. Keller by instrument of writing, dated December 14, 1945, in which the York County National Bank is named as trustee, is hereby terminated, and trustee is directed to pay and deliver over to Virginia A. Keller the net balance on the account of the trustee, as awarded to her in our report of audit of the trustee's account this day filed. Upon the payment of award and the execution of a release by Virginia A. Keller to the trustee, said trustee shall be released and discharged of and from any and all future liability for or by reason of the trust.