**Martin Estate**

*Wenger & Byler,* for accountant.
*John A. Solis-Cohen,* for Commonwealth.

APPEL, J., July 18, 1974.—C. Z. Martin died testate September 25, 1961. The material provisions of the will necessary for purposes of this adjudication are:

"THIRD: I give, devise and bequeath all the rest, residue and remainder of my estate to my wife, Elsie B. Martin, my son, Christian M. Martin, and The Fulton National Bank of Lancaster, Lancaster, Pennsylvania, IN TRUST, to hold, manage, invest and reinvest the same and after paying for the proper upkeep thereof and the expenses of administration thereof, to distribute the net balance in manner following:

"(a) My said Trustees shall pay One Hundred Fifty ($150.00) Dollars per month to my said wife, Elsie G. Martin, for and during the term of her natural life or widowhood. I direct that the said payments to my wife shall be made before any other payments of income are made to the distributees hereinafter named.

"(b) In the event that my son, Christian M. Martin, should discontinue giving a home to my daughter, Anna Ruth Martin, which he is now doing in accordance with an agreement which I have entered into with him during my lifetime, and shall have repaid the

Three Thousand ($3,000.00) Dollars which he has received from me, said repayment having been made to me during my lifetime or to the said Trustees after my death, then I direct that any charges which may be accruing for the support and maintenance of my said daughter, Anna Ruth Martin, shall be paid by the Trustees out of the residue income of my trust estate. In the event that the said income should be insufficient for her proper maintenance and support including medical care and hospitalization, then I direct that said Trustees shall be authorized to use out of the principal of my estate for such purposes, but in no event shall withdrawals exceed one-ninth of the principal thereof.

"I direct that the said Trustees shall have the power to use the residue of said trust estate and the principal thereof (not to exceed one-ninth share) for the maintenance and support, including medical expenses and hospitalization in the event that my said daughter, Anna Ruth Martin, shall continue to live in the home of the said Christian M. Martin.

" . . . .

"(f) Upon the death of my said wife, Elsie B. Martin, and the payment of her burial expenses aforesaid, or upon her remarriage, whichever event shall first happen, I direct that the said trust shall terminate and that the Trustees shall distribute the remainder thereof in nine equal shares in manner following:

" . . . .

"(2) The remaining share shall be given to The Fulton National Bank of Lancaster, IN TRUST, for the use of my said daughter, Anna Ruth Martin, provided, however, that her share shall be charged with the sum of Three Thousand ($3,000.00) Dollars, said charge to be made, however, only in the event that the said Christian M. Martin shall not have repaid the said

sum of Three Thousand ($3,000.00) Dollars; and said share shall be further charged with any payments of principal that shall have been paid out by the Trustees during the continuance of the life estate of my said wife as hereinbefore provided for. The said Trustees shall use the income from the said trust for the maintenance and support of the said Anna Ruth Martin and in the event that the same is insufficient for such purposes, then the said Trustees shall be authorized to use of the principal for such purpose or purposes. Upon the death of the said Anna Ruth Martin, I direct that the said Trustees shall pay the burial expenses, including a suitable marker at her grave. Any portion of the said trust estate not expanded for the purposes hereinbefore set forth shall be paid by the Trustees to my eight children, the issue of a deceased child to take the share the child would have taken if living."

The trust for the life or widowhood of Elsie B. Martin was terminated by her marriage on June 21, 1969. On May 27, 1971, we filed an adjudication pertaining to the second and final account of the trustees and the third and final account of the executors. The latter was an account of assets not fully administered prior to the termination of the trust and which had never been a part thereof. By that adjudication, there was awarded to the Fulton National Bank of Lancaster, in trust for the use of Anna Ruth Martin, under the provisions of paragraph THIRD (f)(2) of decedent's will, the principal sum of $7,012.09, and income from the trust earned after June 21, 1969, in the sum of $349.32.

The trustee has been presented with the claim of the Commonwealth of Pennsylvania for care and maintenance of Anna Ruth Martin at the Harrisburg State Hospital in the sum of $7,404.02. The Lancaster

County Institution District has presented is claim for similar services in the sum of $17,595.18. Confronted with claims in excess of the value of the trust, the trustee has filed its account to obtain a determination of the matter by the court.

At audit, the accountant requested a number of items of income surcharge and additional credit as stated in exhibit "A." With one exception, they are allowed in full. The exception is a "fee for 1972 income tax information" in the sum of $10. It is our understanding that, under certain circumstances, a trustee is required to file income tax returns with the United States and the Commonwealth of Pennsylvania and that this duty has historically been deemed a part of the services performed by it qua trustee for which compensation is obtained by the allowance of applicable percentages. To make an additional charge to the beneficiary for supplying to her the same information which the fiduciary is required to provide governmental bodies is, in our opinion, inappropriate and we, therefore, refuse the request for this additional credit. Balance due estate according to the account:

| | | | |
|---|---|---|---|
| Principal—Personalty | | | $6,706.86 |
| Income—Personalty | | $351.82 | |
| Surcharges | $628.86 | | |
| Additional credits | 622.84 | 6.02 | 357.84 |
| Balance for distribution | | | $7,064.70 |

From October 6, 1943, to April 13, 1970, Anna Ruth Martin was intermittently a guest at the Harrisburg State Hospital. The total charges for her care and maintenance are $29,333.18. Payments have been made in the sum of $21,929.16 whereby the present sum claimed is $7,404.02. According to the Commonwealth's brief, $3,984.02 was incurred prior to the mar-

riage of the surviving spouse, which terminated the trust as to her, and $3,420 was for the period after the marriage.

On April 13, 1970, Miss Martin was admitted to Conestoga View, the home for indigents operated by the Lancaster County Institution District. The claim presented by the district is $17,595.18. Since she is presently a guest and since it appears reasonable to suppose that she will continue there until her death, it may be anticipated that the claim of the District will continually increase.

Both the Commonwealth and the district assert that the principal and income should be awarded on account of their claims. They differ only as to what part of the Commonwealth's claim is entitled to participate. The trustee has contended that the trust should not be terminated by the allowance of the claims, that the use of the principal for maintenance and support is not required under the will, and that the trust should be held intact to provide for personal items required by the beneficiary including hearing aid batteries, clothing and incidentals.

We believe that Walters' Case, 278 Pa. 420 (1924), requires that we reject the argument of the trustee and award the balance for distribution among the claimants. In Walters' Case, the mother of an inmate at the Dixmont Hospital for the Insane had bequeathed a sum in trust, the income to be used, at the discretion of the trustee, for the " 'comfortable support and maintenance' of Frederick, with the right to use part or all of the corpus of the estate for this purpose, if necessary." The will contained a spendthrift clause. The trustee denied liability for care provided for Frederick at Dixmont; however, the court concluded that the Commonwealth was entitled to payment, stating that:

" 'his discretion is but a legal one, and whenever the law determines that a proper case has arisen in which the trustee's discretion should have been exercised in a particular way, he will be constrained to act in accordance therewith': Erisman v. Directors of the Poor, 47 Pa. 509, 514; Stewart v. Madden, 153 Pa. 445; Barrett's Est., 53 Pa. Superior Ct. 103."

With regard to the time when services were performed, the court concluded that: "After its creation, amounts due for support and maintenance were properly demandable from the trustee, but not for any period prior thereto." The principles enunciated in Walters' Case have been applied in numerous cases of which those having some factual similarities to the present are: Estate of Elizabeth Hohenshieldt, Dec'd., 105 Pa. Superior 18 (1932); and Gillis Trust, 14 Fiduc. Rep. 643 (1964).

It is obvious that the district's claim must be allowed in full. There may be a question whether the Commonwealth's claim is allowable in full or only to the extent of services rendered after the marriage. The fund, per se, did not come into existence until the marriage on June 21, 1969, therefore, under Walters' Case there could be no recovery for the prior period. The Commonwealth argues that the general dispositive plan of testator was at all times to provide for one-ninth of the principal of his estate to be available for Anna. It is suggested that the two trust devices were merely to accommodate and make feasible the payment of income to the spouse and the division into ninths upon her death or marriage. Since the duties as to Anna remained the same, it is urged that we should consider that testator intended one trust as to her and, therefore, the date for the establishment of claims for Anna's maintenance and support would be testator's death and not the termination of the original trust. Although we admire the imaginative thought

which has produced this argument, we are not disposed to accept it. We point out that the trustees of the two trusts are different and that the claim could not have been rendered certain in amount during the existence of the first trust, because of the vagaries and fluctuations thereof. At all events, it is our belief that the failure to present the argument at the time of the adjudication of May 27, 1971, made that adjudication binding as to claims for the prior period.

For the reasons stated, we allow the claim of the Commonwealth in the sum of $3,420, being the charge for services provided for Anna Ruth Martin after the marriage of the surviving spouse.

The will of testator establishes that the maintenance and support of Anna Ruth was not the sole purpose intended for the trust. In paragraph THIRD (f) (2), testator provided as follows:

"Upon the death of the said Anna Ruth Martin, I direct that the said Trustees (sic) shall pay the burial expenses, including a suitable marker at her grave."

Legislative approval of providing a proper burial, lot or other resting place, and marker is established by reference to section 5537 of the Probate, Estates and Fiduciaries Code of June 30, 1972 (No. 164), 20 Pa. S. §5537, which permits the court to authorize the guardian of an incompetent to retain $600 for such expenses. Testator having stated an intention with regard thereto, we believe that the payment to claimants should not consume the entire fund which would relegate the beneficiary to a pauper's grave. As was stated by Judge Silverstein in Meksras Estate, 24 Fiduc. Rep. 249 (1974), at page 251: "From the beginning of recorded civilization, man has always honored his dead."

The conclusion that it is appropriate to set aside a sum for the expenses of burial and a marker leads to the questions of with whom, and how much?

The trustee has understandably indicated that it does not desire to have its records burdened. Since it appears that Anna Ruth will remain at Conestoga View, we conclude that the Lancaster County Institution District should hold the sum. It will be in a position to allot income for incidentals, and should the principal sum be in excess of that required for burial and a marker, it would be able to retain the balance due the district at that time.

We do not regard the legislative sum of $600 as binding in this situation. We are here treating with the daughter of a testator whose estate was valued at $118,695.02 in the inventory filed in 1962 and whose funeral in 1961 cost $589. We are unable to estimate how much a similar funeral would cost in 1974. To conjecture what the cost would be at an uncertain time in the future would be folly. Nevertheless, it is our responsibility to establish a sum which will adequately carry out the intention of testator. We conclude that the sum of $1,500 will adequately permit the second intention of testator to be carried out and that, at the same time, the present creditors to whom payments on account of claims are now being directed will not be unduly prejudiced thereby.

## DISTRIBUTION

| | |
|---|---|
| To the Lancaster County Institution District, the principal to be held for the burial expenses and a suitable marker for Anna Ruth Martin, the income to be used for incidentals for her, | $1,500.00 |
| To the Commonwealth of Pennsylvania, on account of claim, | 905.60 |
| To the Lancaster County Institution District, on account of claim, | 4,659.10 |
| | $7,064.70 |

As herein amended, the account is confirmed and it is ordered and decreed that the Fulton National Bank of Lancaster, trustee as aforesaid, pay the amounts, as herein directed, to those respectively entitled to the same.

This report is confirmed nisi.