**Weiss v. Saunders, Silver & Weiss, Inc.**

*Theodore R. Mann,* for plaintiffs.

*Harry Silver,* and *Joseph T. Coghlan, Jr.,* for defendant.

EISEMAN, J., August 31, 1970.—This matter comes before the court on defendant's preliminary objections to plaintiffs' complaint in equity.

Plaintiffs, Mae Weiss and David Kraftsow, Executors of the Estate of William Weiss, deceased, filed a complaint in equity alleging that on April 30, 1964 the corporate defendant, Saunders, Silver and Weiss, Inc., and the sole shareholders of defendant, Morton Saunders, Seymour Silver and decedent, William Weiss, entered into a "Buy-Sell Stock Agreement" obligating the company to purchase a shareholder's stock interest at a fair value upon his death. The value of the stock was to be agreeably determined and redetermined from time to time by the shareholders, or upon the failure to agree upon value, then as determined by the American Arbitration Association. In order to provide funds for the purchase of stock upon the death of a shareholder, the corporation allegedly obligated itself to purchase insurance on the

life of each shareholder. Plaintiffs further allege that upon decedent's death, defendant received $43,000 in insurance proceeds, which moneys have been commingled with the general funds of the corporation.

The parties have disagreed upon the value of deceased's stock, the defendant maintaining that plaintiffs are only entitled to $33,333.34, which sum it has tendered.[1] Accordingly, pursuant to the buy-sell agreement, the dispute has been submitted to arbitration.

Plaintiffs, by their complaint in equity, seek to withdraw the insurance proceeds from defendant's general business funds, either by placing the full $43,000 in an interest-bearing escrow account or, in the alternative, by escrowing the balance after entry of judgment for $33,333.34 and payment thereof.[2]

Defendant filed preliminary objections to the complaint, contesting, among other things, the court's jurisdiction over the subject matter of the suit.

The court denied defendant's preliminary objections, from which an appeal was taken.

For the purpose of deciding whether this court has jurisdiction, the following portions of the buy-sell stock agreement are pertinent:

"Whereas, each of the stockholders are owners of eight-three and one-third (83-1/3) shares of stock

[1] Defendant contends the stock value agreed upon at the time the agreement was entered into, $33,333.34, controls, since there has never been a redetermination of its value. Plaintiff's response under the agreement stock value is to be redetermined prior to the transfer back to the corporation to reflect any appreciation in value.

[2] Plaintiffs argue that defendant, by tendering $33,333.34, has admitted at least this part of the insurance proceeds belongs to plaintiffs and they are entitled to a judgment for this amount. If, after arbitration, the stock is valued in excess of $33,333.34, then the court could award a judgment for the additional sum.

in the Company, and it is their mutual purpose, (a) to provide for the purchase by the Company of a decedent's stock interest therein . . . and (c) to provide funds necessary to carry out such purpose.

"Paragraph 2. Upon the death of any stockholder, the Company shall purchase, and the estate of the decedent shall sell, all of the decedent's share in the Company now owned or hereafter acquired. The purchase price of such stock shall be computed in accordance with the provisions of paragraph 3 hereof.

Paragraph 4. The Company is the applicant, owner and beneficiary of the following life insurance policies issued by Sun Assurance Company of Canada:

(Policies on lives of all stock owners are listed, including those listed in Schedule B totaling $43,000 on life of William Weiss, the decedent.)

"The Company agrees to pay premiums on the insurance taken out pursuant to this agreement, and shall give proof of payment of premiums to the stockholders whenever any one of them shall so request such proof. If a premium is not paid within thirty (30) days after its due date, the insured shall have the right to pay such premiums and be reimbursed therefor by the Company . . .

"Paragraph 5. Excluding the amount of life insurance proceeds which *shall* be used to pay for the purchase of the stock as heretofore provided . . .

"Paragraph 6. If any stockholder withdraws from the Company during his lifetime, or if this Agreement terminates before death of a stockholder, then such stockholder shall have the right to purchase the policies on his life owned by the Company . . ."

A defendant, preliminarily contesting jurisdiction over his person or the cause of action, may, pursuant to the Act of March 5, 1925, P. L. 23, sec. 1, 12 PS §672, appeal from an adverse order, "as in cases of

final judgments." Section 4 of the Act of 1925, 12 PS §675, delineates the scope of such an appeal by eliminating questions relating to the form of action between law and equity provided for in the Act of June 7, 1907, P. L. 440, 12 PS 1227.

Accordingly, for the purposes of this appeal, the Court views the question of jurisdiction in terms of the Act of 1925: Gallagher v. Keystone Realty Holding Company, 333 Pa. 9 (1939); Witney v. Lebanon City, 369 Pa. 308 (1952).

In Zerbe Township School District v. Thomas, County Commissioners, 353 Pa. 162 (1945), on an appeal from a jurisdictional determination by the court below, the test of jurisdiction, under the Act of 1925, was said to be whether the court has the power to enter upon an inquiry, and not what it may utlimately decide. Even if a plaintiff had no standing to sue, or the bill in equity was demurrable as not averring sufficient facts to entitle plaintiff to recover, there not being a good cause of action, the court would still have jurisdiction. Jurisdiction looks to "the competency of the particular court to determine controversies of the general class to which the case then presented . . . belongs." Citing Skelton v. Lower Merion Township, 298 Pa. 471, 473 (1930).

Also see White v. Young, 402 Pa. 61 (1960), where in an equity action defendant's objection that plaintiff has a complete and adequate remedy at law was not found to raise a jurisdictional question appealable under the Act of 1925; and in Witney v. Lebanon City, supra, the fact that plaintiff's appropriate remedy was to proceed in arbitration, did not bear on the jurisdiction of the court to hear and determine the assumpsit action. The court said:

". . . the Act of 1925 was not intended to furnish a shortcut to a determination of the issues of law or

fact raised by the pleadings and that it was not concerned with matters going to the right of plaintiff to recover on his cause of action but only with his right to have his cause of action heard and determined": (Page 312).

After considering the above principles, it is difficult for this court to determine the basis for defendant's appeal. As said in Zerbe Township School District v. Thomas, supra, 167, 168, "The question with which we are now concerned is merely whether the Court of Common Pleas of Northumberland County has jurisdiction, not whether it can grant equitable as opposed to legal relief. There are not two courts in Northumberland County, one of law and one of chancery, but as was said by Judge Lowrie in Adams v. Beech, 1 Phila. 99, 101, only 'one court, having power to administer redress under the common law or chancery forms, according as the same are appropriate.' . . . 'Whether a case may be brought in the chancery form is only a question of form [of action] and not of jurisdiction.' . . . Can it be doubted that the Court of Common Pleas has jurisdiction to prevent, either by injunctions in equity or by writs of estrepement at law, the commission of waste?"

The same may be said of the Common Pleas Court of Philadelphia. Does not this court have the power to hear and determine what is essentially a dispute over the interpretation of a contract and moneys received pursuant to the contract? The court may ultimately find that arbitration should handle this matter, or it may decide the remedy is by a suit in assumpsit or that equity will not grant the relief requested by plaintiffs. However, for purposes of this court's jurisdiction, these matters are not relevant. The Common Pleas Court of Philadelphia can enter

upon an inquiry of this case no matter what the final outcome may be. See Carelli v. Lyter, 430 Pa. 543 (1968), supporting this position.

Our decision need not rest solely on the general jurisdiction of the common pleas court to hear this case. The court sitting as chancellor is given statutory jurisdiction over cases of this general class.

By the Act of June 16, 1836, P. L. 784, sec. 13, 17 PS §282, equity was given jurisdiction over "the supervision and control of all corporations other than those of a municipal character, . . ."

In McDougall v. Huntingdon and Broad Top R. & C. Co., 294 Pa. 108 (1928), citing Commonwealth v. Bank of Pennsylvania, 3 W. & S. 193, the Act of 1836 was said to give equity general and unlimited power to control and supervise corporations. Thus, the general class set up by the Act of 1836, control and supervision of corporations, is within equity's jurisdiction. The statutory class is broad in scope and this has been given full effect by prior court decisions.

The case at bar involves not only a contractual dispute but a dispute between a stockholder and a corporation. The court has been asked to exercise control over the corporation's use of specific funds, part of which admittedly belongs to plaintiffs, while arbitration resolves the dispute over the value of the stock. There can be no doubt equitable jurisdiction may be invoked under such circumstances.

Additionally, the legislature, in the Act of 1836, has seen fit to create another class of cases to which equity jurisdiction attaches, "The care of trust moneys and property."

While the buy-sell stock agreement does not expressly state that the insurance proceeds are to be held in trust by the corporation, there is ample reason to find, by implication, a trust. A beneficiary named

in a policy of insurance may become trustee of the proceeds, either by express agreement, or by force of the attendant circumstances, whether or not he be designated as such in the policy: Gritz v. Gritz, 336 Pa. 161, 164 (1939).

Essentially, there are three requirements to the existence of a trust arrangement: First, sufficient words to create a trust; second, a definite subject matter, and third, a certain or ascertained object: Pugh v. Gaines, 156 Pa. Superior Ct. 613 (1945).

In Pugh v. Gaines, supra, a trust was impressed on the insurance proceeds after the named beneficiary promised to pay part of the proceeds to a third party to end a dispute over who legally was entitled to the money. Also in Jackman v. Equitable Life Assurance Society of United States, 145 F. 2d 945 (C.A. 3d Cir., 1944), the court found a letter from the insured to the named beneficiary directing him to share the insurance proceeds with four others, sufficient to impress a trust on the funds. The letter supplied the words sufficient to create a trust, the policy was the subject matter of the trust and the object was to benefit five friends of the insured. And in Quinn v. Leidinger, 107 N. J. Eq. 188, 152 Atl. 249 (1930), the New Jersey Chancery Court, in a situation to ours, impressed a trust on insurance proceeds payable to the insured's estate, because of an agreement between the deceased and his business partner to hold life insurance for the benefit of the partnership.

Similarly, the agreement in this case has all the elements of a trust relationship. The introductory clause of the contract states as its purpose, "to provide for the purchase by the Company of decedent's stock interest therein . . . and (c) to provide for the funds necessary to carry out such purpose." Then paragraph 4 enumerates the policies held by the cor-

poration on each shareholder, naming the corporation as beneficiary.[3] Paragraph 5 states, without qualification, ". . . life insurance proceeds, which *shall* be used to pay for the purchase of the stock . . ." The purpose or ascertained object of the insurance is clear; the subject matter, the insurance policies themselves, are definite. The agreement supplies sufficient words to create the trust.

By mandating the stock transfer, the parties intended that the estate of a deceased shareholder would be the ultimate beneficiary of the insurance. Nowhere in the agreement is the corporation given the right to use these proceeds for general business operations, with attendant normal business hazards. To allow such activity is to remove the very protection afforded a deceased shareholder's estate by the agreement.[4]

Of course, the court at the time the case is tried on the merits must make the final determination of whether a trust, in fact, exists. However, our jurisdiction does not rest on the outcome of the case, but on the court's competency to hear and determine cases of this general class.

---

[3] It is significant that in paragraph 4 of the agreement stockholders were given the means to ensure that premium payments on the insurance were made by the company. This, coupled with paragraph 6, which gives a shareholder the right to purchase the life insurance from the company under certain circumstances, indicates who, ultimately, had the beneficial interest.

[4] Even if no actual trust is found, the court may grant relief to plaintiffs by constructing a trust onto the insurance proceeds. A constructive trust may arise against one who has been unjustly enriched, even though guilty of no wrong: Dubin Paper Company v. Insurance Company of North America, 361 Pa. 68 (1949). The corporation, under the buy-sell agreement, had an obligation to purchase plaintiffs' stock and use the insurance proceeds for that purchase. To use the money for any other purpose would be an unjust enrichment, in violation of the terms of the contract.